### CITY OF GALVESTON v. PETER HEMMIS.

#### No. 2480.

1. **Liability of City for Defective Sidewalks.**—In a suit by a special policeman for damages against the city in whose employ he was when injured by a defective sidewalk, when the plaintiff testified that he did not know of the defect, it will not be presumed that he had the same or equal knowledge of it with the city nor that the defect was patent. A verdict for the plaintiff will not be set aside as against a charge that

if the jury find that plaintiff was in the employ of the city and had equal means of knowing the defect and if the defect was patent they should find for the defendant.

2. **Policeman—Duty and Risks.**—Policemen do not assume risks incident to defective sidewalks and highways in the city where employed, and do not stand in the same relation to the city that the employes of a railroad company or other private corporations do to their employers and are not subject to the restricted rights of such relations.

3. **Contributory Negligence.**—Where the injured plaintiff testified to his ignorance of the defect and to the care he exercised when injured the verdict in his favor will not be set aside.

4. **Reasons of Judge for Refusing a New Trial.**—The action of the court in refusing a motion for a new trial is revised on appeal, not the reasons upon which the action was based.

5. **Same.**—The trial judge gave as a reason for his decision upon a question doubtful in his mind that the defendant could appeal without bond and had plenty of money. *Held,* that such action though improper was not subject to revision.

Appeal from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*George P. Finlay,* for appellant. —1. A city is not liable to an employe when the defect which occasioned the injury was patent, open, and visible, nor where the employe had the same or equal means of knowing the condition of the sidewalk. These are risks incident to the employment. Charter of the city of Galveston, sec. 54; Revised Ordinances, Police Rule 27; Dill. on Mun. Corp., 3 ed., vol. 2, sec. 974; Wood on Master and Servant, sec. 455 *et seq.;* Railway Co. v. Lempe, 59 Texas, 19; Railway Co. v. Drew, 59 Texas, 10; Railway Co. v. McCarthy, 64 Texas, 635; Railway Co. v. Watts, 63 Texas, 549; Railway Co. v. Callbreath, 66 Texas, 528; Wormell v. Railway Co., Cent. Law Jour., vol. 25, No. 16, p. 352; Railway Co. v. Hester, 64 Texas, 401; Wood on Master and Servant, secs. 326, 328, 349; Beach on Con. Neg., secs. 133, 138, 139, 140; Deer. on Neg., sec. 196; Whart. on Neg., sec. 214; Shearm. & Redf. on Neg., sec. 94.

2. Municipal corporations are only required to keep their streets and sidewalks in a reasonably safe condition to persons of ordinary care and prudence. Dill. on Mun. Corp., secs. 1015, 1016, 1019, 1020, 1025, 1026; Beach on Con. Neg., sec. 77.

*Wheeler & Rhodes,* for appellee. —1. The city is liable under the facts of this case because the defect was not patent, nor open and visible; the accident occurring in the night time, the streets of the defendant corporation at that point being badly lighted and lights defective, the plaintiff being wholly unacquainted with these steps and crossings, although on one of the main thoroughfares of the city, while the defendant not only had full notice and knowledge of these defects and dangerous condition, but originally constructed these identical defective steps

and placed them in their dangerous condition. 2 Dill. on Mun. Corp., 3 ed., sec. 1010, p. 1026, an authority in point both as to proper condition of the street and lighting the same; City of Galveston v. Posnainsky, 62 Texas, 118.

2. Were it true that this defect was patent and visible, and had the plaintiff actually known of this defect, its nature and extent, and could he have passed around this dangerous place, this as a matter of law itself did not entitle the defendant to a verdict, for the reason that even in such state of case it would still be a question for the jury whether the plaintiff was guilty of contributory negligence in passing over this defective crossing. McKeigue v. The City of Janesville, 31 N. W. Rep., 425, a case directly in point.

3. The passage (steps) from the sidewalk in question to the street not only not being reasonably safe but actually dangerous, and under its charter the city of Galveston having exclusive control and power over the streets and being charged with this duty, was bound at all times to keep its streets and sidewalks in reasonably safe and proper condition, and is therefore liable for its failure to do so, and particularly where as in this case the corporation had full notice of and was originally actually responsible for the defective construction of this dangerous crossing.

4. The verdict of the jury is not contrary to the instructions of the court as set forth in second and third assignments of error because the court left it to the jury to determine as a question of fact whether the plaintiff knew of the defect in the crossing or had been on the beat where such defect existed sufficiently long to have become aware of such defect. There being a conflict in the evidence on this point the verdict will not be disturbed by this court. Lewy v. Fischl, 65 Texas, 311.

5. The charge of the court cited in second assignment of error as follows, "Policemen and supernumerary night policemen who may be employed for police duty on their respective beats and enjoying the pay of the city for such services are employes of the city and assume all the risks ordinarily incident to such service," is not a correct statement of the law of this case, but is directly contrary to the law, the injury having occurred from a defective street crossing. The true proposition is, "a police officer has no such relation by virtue of his employment to the city whose officer he is as to prevent him from maintaining an action to recover for injuries sustained by reason of a defective highway therein." 2 Thomp. on Neg., p. 1242, sec. 17; Kimball v. Boston, 1 Allen, 417; Palmer v. Portsmouth, 43 N. H., 265.

6. Even were the verdict against and contrary to the charge of the court, the jury having come to a proper verdict under an erroneous charge and the evidence though conflicting being sufficient to reasonably satisfy the mind that their conclusion was correct, the verdict will not be dis-

turbed.    7 Texas, 556; 8 Texas, 439; 16 Texas, 94; 22 Texas, 37; 28 Texas, 19; City of Galveston v. Morton, 58 Texas, 416.

7.   Sidewalks are parts of the public streets, and must be kept in a safe and convenient state of repairs for public use throughout their whole width, and any person traveling a sidewalk of a city which is in a constant use by the public has a right when using the same with due diligence to presume and act upon the presumption that it is reasonably safe for ordinary travel throughout its entire width from all dangerous and annoying obstructions of a permanent character.    Sherm. & Redf. on Neg., 2 ed., sec. 385, p. 460; Indianapolis v. Gaston, 58 Ind., 224.

8.   Whether negligence exists in a particular case is a question of fact for the determination of the jury in all cases where there is a conflict of evidence or the facts are disputed.    T. P. Ry. Co. v. Levi, 59 Texas, 674.

COLLARD, JUDGE.—Appellant's first assignment of error is that the verdict of the jury is contrary to the following instruction of the court given at request of defendant:  "If you believe from the evidence that the plaintiff was in the employ of the defendant and had the same or equal means of knowing the condition of the sidewalk where he was injured as did the defendant, and that the defect was patent, open, and visible, then you will find for the defendant."

By this charge two questions of fact were presented to the jury, the finding of both of which in the affirmative was necessary to a finding for defendant.    The defect consisted in having the steps leading from the sidewalk to the pavement shorter than the width of the sidewalk.    Plaintiff while acting as a supernumerary policeman on the night of April 5, 1885, intending to pass from the sidewalk on the Strand at the Moody corner into the street on the steps, missed the second step, and coming to the pavement broke his hip; his left foot landed on the top step so near the end that when he stepped with his right foot it missed the next step entirely, passing to the right of it, and landed on the pavement.    It was at night and the only light in the neighborhood was at the bank corner, so dim he says that he could not see across the street with it.    He says he saw the step and supposed it went all the way along the width of the sidewalk; did not examine.    He says he was on the beat once or twice as a supernumerary; was not acquainted or familiar with the beat; did not make himself acquainted with people's sidewalks; did not think it was any of his business; had no instructions to do so; looked to see if everything was locked.    He also says, "I was satisfied there was a step, but it was pretty dark and I could not see."

He testified that he was careful in getting down on the step.    The roster showed that he had been on that beat seven times in all at night from February 20 to April 5, 1885.    The steps had been in the same condition as on the night of the accident five or six years, and the ser-

geant of the police testified that the plaintiff had been on that beat as supernumerary two or three times. He had been a regular policeman before this, and the sergeant testified he had then been on the beat and had been there long enough to know it. Plaintiff says he knew rule 27 of the police regulations, which is as follows: "The prevention of crime being the most important object in view the patrolmen's exertions must be constantly used to accomplish that end; he must examine and make himself acquainted with all parts of his post, and vigilantly watch every description of person passing his way, and he must to the utmost of his power prevent the commission of assaults, breaches of the peace, and all other crimes about to be committed." There was evidence tending to show that the steps were dangerous and that a man of ordinary prudence might step off there at night; also that the steps could be made safe by extending them the entire width of the sidewalk as was now being done when put down in other places. After plaintiff's accident these steps were reported as defective by the policeman on duty there.

Now the question is, ought this court to say the verdict of the jury was contrary to the charge of the court under the evidence, in that it failed to find that plaintiff had the same or equal means of knowing the condition of steps and sidewalk that defendant had? We think not. Defendant knew with certainty the condition of its steps and sidewalk; it placed them there. Plaintiff was only on duty there on several occasions recently before the accident, and that at night. Had the jury found it was his duty to have known the existence of the defect under proper instructions, we would not as an appellate court feel authorized to set the verdict aside, nor can we say in opposition to the verdict that plaintiff had the same or equal means of knowing there was a defect as did the defendant. The jury also found that the defect was not open and visible. In doing so they very properly viewed the matter from the plaintiff's standpoint. He was on duty there at night; the place was not lighted, at least not sufficiently lighted to enable him to see; and as to him under these circumstances the jury might well conclude that the defect was not visible. It was proved that the steps were unsafe at night to persons passing as plaintiff was. There was evidence *contra*, but it was the duty of the jury to reconcile the conflict, and having done so it is not our province to interfere.

Appellant's second assignment of error complains that the verdict of the jury is contrary to the evidence and the following charge of the court. The charge referred to instructs the jury that the city of Galveston is bound to keep its streets and sidewalks and approaches thereto in reasonably safe condition for use by persons of ordinary care and prudence, but are not absolute insurers of their safety; that night policemen and supernumerary night policemen in the pay of the city are its employes and assume all the risks ordinarily incident to such employment; and

where there may be an open defect in the approaches from the street to the sidewalk, and the policeman knew of such defect, or where the defect was open to ordinary observation and such night policeman had been on that beat where the defect existed sufficiently long to have become aware of such defect, then the policeman is presumed to have assumed all risks incident to such defect.

The appellee contends that the foregoing instruction is not the law; that policemen do not assume risks incident to defective sidewalks and highways. Thompson in his work on Negligence (vol. 2, p. 1242, sec. 17) sustains appellee's view of the law. He says: " A police officer or fireman has no such relation by virtue of his employment to the city whose officer he is to prevent him from maintaining an action to recover for injuries received by reason of a defective highway therein."

He cites in support of the text Kimball v. Boston, 83 Massachusetts, 417, which supports the doctrine in unqualified terms. He also cites Palmer v. Portsmouth, 83 N. H., 265, which rests the doctrine upon a statute. The reason of the rule seems to be that police officers act in their capacity of public officers and not as agents or servants of the city.

The statute of this State makes policemen of incorporated cities and towns public officers, that is, peace officers, and clothes them with the powers and duties of other peace officers. Code Crim. Proc., arts. 44 and 45. They do not stand in the same relation to the city then that the employes of a railroad company or other private corporation do to their employers and are not subject to the restricted rights of such relations.

It might be admitted, however, that the charge of the court presents the law correctly, and still it could not be said that the verdict was not in accord with it under the evidence. The charge does not have the policeman to assume the risk incident to the defect in the approach from the street to the sidewalk unless the policeman knew of the defect, or in case the defect was open to ordinary observation and he had been on the beat sufficiently long to have become aware of it. The jury had evidence before them to sustain their finding under the charge. Plaintiff testified that he did not know of the defect, but that he supposed the steps were long enough. He was only a supernumerary and had only been on the beat at night on several occasions recently before his injury, except a long time before, when he was a regular policeman, and from this the jury might have properly concluded that he had not been on the beat long enough to have discovered the short steps. They had the right to consider that his service there was at night. The verdict was not at variance with the evidence and the charge.

The third assignment of error is not well taken. It complains that the court should have granted a new trial because the verdict was contrary to the law and evidence, and especially contrary to the charge, which

directed the jury to find for defendant if plaintiff's injuries were the result of his own want of care. The court very properly left this question to the jury. Plaintiff testified that he was ignorant of the condition of the steps; that he supposed, as he had the right to do, that they extended the whole width of the sidewalk (2 Dill. on Mun. Corp., sec. 1007, p. 1023), and that he was careful in getting down on the step. We see then that there was evidence to support the verdict under the charge, which if credited by the jury warranted the conclusion arrived at by them.

The fourth assignment of error is not set out in appellant's brief, but the proposition under it is as follows: "When the verdict is contrary to the law and the evidence, and contrary to the instruction of the court, it is the duty of the court to grant a new trial without regard to the financial condition of the parties."

The trial judge remarked from the bench as a reason for overruling the motion for a new trial, "that the question whether a policeman was an employe had never been passed upon by the Supreme Court, and as the city could appeal without giving bond and had plenty of money to pay for the transcript and the plaintiff was poor, he would overrule the motion." The judge signed a bill of exceptions for defendant containing the above as his reason for overruling the motion for a new trial. It was the duty of the judge to grant the new trial if he was of opinion the evidence did not support the verdict under the law and if he thought he had charged the law on the question of policemen being employes of the city. The financial condition of the parties ought not to influence the court in passing upon a motion for a new trial. The facilities with which one of the parties can appeal ought not to be considered as a reason. It is not a reason.

We have already expressed our opinion upon the law as given in the charge, that the charge is incorrect; that policemen are not employes of the city, and do not assume risks of bad and defective passways; so the ruling of the court upon the reason assigned is relieved of the error it would have if the law as given in his charge had been correct. The court did overrule the motion, and it is apparent he would have done so if he had thought the law was as we have stated it to be. The error is harmless and should not require a reversal of the case.

We conclude the judgement of the court below should be affirmed.

*Affirmed.*

Adopted January 29, 1889.