BUTLER et al. v. CITY OF CONROE et al.
(No. 534.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 10, 1920. Rehearing Denied Feb. 18, 1920.)

1. MUNICIPAL CORPORATIONS ⬤⟱821(26)—NEGLIGENCE OF INJURED PEDESTRIAN IN CHOICE OF WAY A JURY QUESTION.

A question of negligence of a pedestrian in walking on a sidewalk known to be obstructed, rather than in the street, *held* for the jury.

2. MUNICIPAL CORPORATIONS ⬤⟱805(1)—PEDESTRIAN KNOWING OF OBSTRUCTION ACROSS SIDEWALK MUST USE ORDINARY CARE.

If a pedestrian knows of an obstruction across a sidewalk, and fails to use ordinary care, and is injured thereby, his negligence bars recovery.

3. MUNICIPAL CORPORATIONS ⬤⟱821(23)—NEGLIGENCE OF PEDESTRIAN FALLING OVER KNOWN OBSTRUCTION A JURY QUESTION.

Negligence of pedestrian, injured by falling over a known obstruction across the sidewalk, *held* a question for the jury.

Appeal from District Court, Montgomery County; D. F. Singleton, Judge.

Action by Mrs. Joe Butler and husband against the City of Conroe and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

A. L. Kayser, of Conroe, and Adams & Young, of Crockett, for appellants.

W. N. Foster and R. J. Sullivan, both of Conroe, for appellees.

WALKER, J. Appellants, Mrs. Joe Butler and her husband, Joe Butler, sued the city of Conroe and the Conroe Gin, Ice & Light Company for damages for injuries received by Mrs. Butler in falling over a pole lying across a public and used sidewalk in the city of Conroe. Mrs. Butler testified, in part, as follows:

"I was injured February 13, 1917. I had company, and started the family to eating supper, and then left home to go to the store for a box of crackers, and on leaving gate saw a door of the Catholic Church across the street open, and I went across and closed the door, which threw me late. This pole was lying there in the shadow. I ran over to Mr. Beakley's store and got a box of crackers, and wanted to get home in time for Mr. Butler to get his supper on time; consequently I ran into the pole. I had nothing else on my mind but getting the crackers. I fell down and my arm—I didn't think it was very bad until I got in the house and found it was just hanging loose. * * * I certainly did see that pole when it was first taken down. It was left directly in the shadow of the other pole that they put up. It lay there right across the sidewalk, * * * just like they drawed it out and put the other pole in, and it was left there for an indefinite length of time, right in the shadow of the pole, which would have looked just like the shadow, and I couldn't exactly—it didn't look like a pole. I saw Mr. James [a servant of the Conroe Gin, Ice & Light Company] take the pole down and saw him working sitting on the pole—when he got through, went away, and left the pole right at that same position. James works for the electric light people. I said the pole was lying right in the shadow of the other pole he put up. The light hangs out on the other side across the street, and naturally throws the shadow across the pole up the other way. * * * I went after a box of crackers, and I came running with them, and I did not have it [the pole] in my mind. I had getting home with the crackers in my mind. I was not thinking about the pole at all. I did not have anything on my mind at all, but getting right home and getting supper ready. If I had thought about the pole, I certainly wouldn't have fallen over it. * * * The pole was between my house and Mr. Beakley's store, lying right across the sidewalk. * * * It extended entirely across the sidewalk, which is now in front of Ike Ashe's house, and it lay right exactly in the shadow of the new pole that was put up there. It stayed right in that shadow there the entire time from the time until the 16th of February. I hurt my arm on the 13th. It stayed there until the 16th at 5 o'clock. It positively never had been moved from that position in the shadow of the pole that they put up immediately across the sidewalk all that time until three days, two or three days, after I received my injury. * * * It certainly did stay in that particular position for several weeks. * * * I knew that the pole was there all the time. I had passed over that pole before. I had not stumbled over that pole before; stepped over it in the daytime, I couldn't tell you how many times. Time and time again I had passed right over that pole, but not over the shadow."

---

⬤⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Witness further testified that, when she left Beakley's store and got near enough, she did not see the shadow, and did not see anything. She was looking right at her house, and was going as fast as she could. At this place many of the citizens used the street, instead of the sidewalk. Joe Butler, one of the plaintiffs, testified:

"That sidewalk was generally and .customarily used by the public. The street is constantly used by vehicles. * * * The sidewalk in question is ordinarily and customarily used by pedestrians going back and forth."

[1] On these facts the trial court instructed a verdict for the defendants. They seek to sustain this instruction on two grounds: First, that Mrs. Butler was guilty of contributory negligence as a matter of law in using the sidewalk rather than the street; and, second, that she was guilty of contributory negligence in failing to keep a proper lookout for the pole which she knew to be across the sidewalk. The first point has been directly decided against appellees. In Ball v. City of El Paso, 5 Tex. Civ. App. 221, 23 S. W. 835, Justice Fly, speaking for the court, said:

"Cities and towns are held responsible for the condition of their streets and sidewalks, and they cannot be permitted to shield themselves from the charge of negligence in this respect by making the defense that the person injured might have gone to his point of destination by some other route. * * * Even if it had been incumbent on appellant to have gone by a different street, his act in going where he did was not in itself such want of care as would justify a judge in taking the question from the jury and telling them it was negligence."

[2] The second issue is of more difficulty. If a pedestrian knows of an obstruction across a sidewalk, and fails to use ordinary care for his own safety, and is injured thereby, he is guilty of contributory negligence, and cannot recover. But, as we construe the decisions of our courts, as well as of other states, this is a question of fact, to be decided by the jury. As said by Justice Head in City of Denison v. Sanford, 2 Tex. Civ. App. 661, 21 S. W. 784:

"It is well settled in this state that knowledge of the defect by an injured traveler prior to the injury is not conclusive evidence of negligence on his part. The question of contributory negligence thus raised is one for the jury under the circumstances of the particular case. Railway Co. v. Gascamp, 69 Tex. 545, 7 S. W. 227; City

of Galveston v. Hennis, 72 Tex. 558, 11 S. W. 29, 3 Am. St. Rep. 828; City of Austin v. Ritz, 72 Tex. 391, 9 S. W. 884."

See, also, Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63.

Zoellner v. City of Fond du Lac, 147 Wis. 300, 133 N. W. 35, was a suit for personal injuries sustained by plaintiff. He knew of the defect in the sidewalk. Discussing this issue, the Supreme Court of Wisconsin said:

"He [the plaintiff] was in company with his daughter. * * * Presumably his attention was somewhat engrossed by what he was doing and by the fact of companionship; and if they were conversing as the daughter testified, that would be sufficient to account for his not remembering the condition of the walk. While the explanatory circumstances tending to excuse forgetfulness are not of the strongest character, yet they are sufficient to constitute a question for the jury. * * * The mere fact that plaintiff knew of the defect in the sidewalk and still used it would not conclusively establish contributory negligence."

We believe the correct rule is thus announced by the Supreme Court of Wisconsin in Petrich v. Union, 117 Wis. 46, 93 N. W. 819:

"A traveler, knowing of the existence of a defect in the highway, may temporarily forget the existence of such defect, and yet be in the exercise of ordinary care; that it will be presumed, in the absence of evidence to the contrary, that he remembered the defect, and was negligent in falling into it, but that this presumption will give way to explanatory circumstances appearing in the evidence, showing a reasonable excuse for forgetfulness; and that, when such circumstances are shown, the question is one for the jury."

See, also, Robertson v. City of Waukon, 138 Iowa, 25, 115 N. W. 482; Gibbs v. City of Monett, 163 Mo. App. 105, 145 S. W. 841; City of Montgomery v. Ross, 195 Ala. 362, 70 South. 634.

[3] Hence, on this record as reflected by this opinion, the mere fact that Mrs. Butler momentarily forgot this obstruction across the sidewalk does not convict her of contributory negligence as a matter of law. On both issues discussed by us, this is a question of fact for the jury.

For the error committed by the court in instructing a verdict for the appellees, this cause is reversed and remanded for a new trial.