## MARSHALL & EAST TEXAS RAILWAY COMPANY v. J. M. PETTY.

### No. 2436. Decided November 17, 1915.

#### Contributory Negligence—Question of Law.

Plaintiff riding on horseback, at a walk and in daylight, on a highway going underneath a railway bridge too low to permit his clear passage, seeing it only in a general way, but, thinking he could pass under without striking it, though his attention was not distracted and the contrary was obvious, was injured by striking his head against a beam of the bridge overhead. Held: That upon his own testimony, his injury was due to his own negligence; that, since there was no room for reasonable minds to differ on this, his conduct was negligent as matter of law, and the Supreme Court should reverse a recovery by him and render judgment for defendant. Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas, 545, and St. Louis S. W. Ry. Co. v. Smith, 49 Texas Civ. App. 1, distinguished. (Mr. Justice Hawkins dissents, holding contributory negligence, under the evidence, a question of fact.) (Pp. 388-390.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Harrison County.

Petty sued the railway company and recovered judgment. This was affirmed on appeal by defendant, who thereupon obtained writ of error.

*F. H. Prendergast*, for plaintiff in error.

*Beard & Davidson,* for defendant in error.—Railway Co. v. Gascamp, 69 Texas, 545; Railway Co. v. Belt, 88 Texas, 642; Lee v. I. & G. N. Ry. Co., 89 Texas, 588; Denison v. Sanford, 2 Texas Civ. App., 661, 21 S. W., 785; Railway Co. v. Briggs, 4 Texas Civ. App., 515, 23 S. W., 503; Railway Co. v. Smith, 107 S. W., 641; Gratiot v. Railway Co., 16 S. W., 386, 19 S. W., 32-33; Cahill v. Railway Co., 92 Ky., 345, 18 S. W., 2; Railway Co. v. Stout, 17 Wall., 659.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the majority of the court.

J. M. Petty brought this suit for damages on account of injuries sustained in his attempting, on horseback, to pass under a railroad bridge over a public road, along which he was traveling, by riding against the bridge and striking his head upon it.

Originally, it appears, the bridge was high enough above the road, but dirt and sand had been washed under it so as to raise the level of the road, making the distance between it and the lower timbers of the bridge only about six feet, clearly not sufficient to admit the clear passage of a man of ordinary size on horseback. The plaintiff was about six feet tall. Astride of an ordinary horse, the elevation of his head would be materially above six feet. It was stated in the testimony that in that situation the lowest timber of the bridge would strike him about the chin. It was daytime, and he was riding in a walk. He was struck on the forehead. No other explanation of the accident is found in the plaintiff's testimony, the only witness on the subject, than that it consisted in his riding against the bridge with his head high enough to strike it.

There have been two trials of the case, the testimony of the plaintiff being by deposition in each instance.

Upon the first, his statement was that he was 79 years of age, and his eyesight had been bad for several years; that as he approached the bridge, riding along the road leaning slightly forward in his saddle, he could see it in a general way, but thought he could ride under it all right; that he saw numerous horse and wagon tracks ahead of him, and it appeared to him, without making any close inspection, that he could ride under it, as the rest of the people apparently had done so; and while so riding under the bridge some heavy piece of timber or hard substance struck him a violent blow upon the head, and seemed to press his neck down between his shoulders. That he had no information the bridge was too low, or in any way dangerous, or that one could not ride under it; that he had not been along there in a long time. He further stated that he could see where other travel had preceded him along the road; that he was sitting in his saddle inclined a little forward, somewhat stooped, when his head and neck struck the timber of the bridge; that the blow pressed him down against the back of his saddle, crushed or doubled up, so to speak.

The judgment rendered in his favor upon that trial was reversed

by the honorable Court of Civil Appeals because of an erroneous instruction. As to whether the plaintiff should be held guilty of contributory negligence as a matter of law, the court said it was not satisfied with the state of the evidence, and that it had doubt about the proper ruling on the question, but would not pass upon it in view of its having reversed the judgment upon another ground. 134 S. W., 406.

Following this, a second deposition of the plaintiff was taken. In this deposition he explained what he meant by the statement in the first deposition, that he saw the bridge in a general way, as follows:

"I saw the bridge in a general way as I would see anything else near me that I had no special occasion to observe. I mean by the term in general way that I did not observe the bridge as to its length or height, or dimensions, I did not notice the size or height of the timbers composing same. Nor its distance from the ground. I thought I could ride under it because the road ran under it, that is, if I gave the matter any thought."

Both depositions were introduced on the second trial, and the testimony of the plaintiff as to the manner of the accident, above recited, was uncontroverted. The trial resulted in a verdict and judgment in his favor for ·$2500; affirmed by the Court of Civil Appeals. 145 S. W., 1195.

This, to our minds, is a plain case of an injury directly caused by the plaintiff's own negligence. It is unbelievable that a man of six feet in height, upon a horse of ordinary size, able, in that situation, to see, and in fact viewing, horse tracks in the road ahead of him, proceeding slowly in a walk, with nothing to distract his attention, could, in the open day, ride up against or into so conspicuous an object as a railroad bridge, directly in front of him across the road, and only six feet above the ground, so as to cause injury to himself, and be in the exercise of ordinary care.

We have stated in full the plaintiff's testimony regarding the accident. He knew the bridge was just in front of him, because he says he saw it as he approached it. He says that he did not observe its dimensions or distance from the ground, but his statement remains that he saw it as he rode toward it. He was, therefore, immediately aware of its presence and location. With it as low and his head as high as the testimony establishes, in an attempt to ride under it a collision, without effort on his part to avoid it, was inevitable, as, in fact, occurred. There is no suggestion in his testimony that he made any such effort. It is evident, on the contrary, that he maintained the same position of his body when he reached the bridge and started under it as when riding toward it. He approached it "leaning slightly forward in his saddle," and, likewise, he was sitting in his saddle, to use his own words, "inclined a little forward, somewhat stooped," when he struck it with his head and neck. There is not an intimation that he lowered his head, or did anything to avoid striking the bridge after reaching it and in passing under it. Granting, as was his testimony, that

observing the bridge in only a general way as he approached it leaning slightly forward in his saddle, he thought he could ride under it with safety, and that a man of common prudence in the same situation might, before reaching it, have formed the same judgment; yet, riding as slowly as the plaintiff was,—only in a walk, it was bound to have been manifest to him when he actually got to the bridge,—since it was then right before his eyes, that if he kept on in that position his head would strike it. Notwithstanding this, it is apparent that he rode right on against it. There can be no room for reasonable difference of opinion respecting a man's act in walking up to an obstruction which is seen and it is necessarily known will strike him if he goes on, and, without any effort to avoid it, walking on into it. That is what the plaintiff's act amounted to.

The case is not analogous to the mere use of a highway which is dangerous; as to which, its use, though it is known to be unsafe, is not conclusive proof of negligence,—illustrated by cases of the character of Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas, 545, 7 S. W., 227, and St. Louis S. W. Ry. Co. v. Smith, 49 Texas Civ. App., 1, 107 S. W., 638. The plaintiff had an unquestioned right to the use of the highway beneath the bridge; and a mere attempt to ride under the bridge, even with knowledge that it was as low as it was, would not itself establish that he was negligent. But that is not the question here. It is, could he, seeing the bridge, ride up to it in a walk, thereby, before passing under it, necessarily reaching a position where it was obvious that he would strike it unless he lowered his head, and, with no evidence showing that his attention was in any way distracted or that he made any effort to avoid striking it, be entitled to damages because he rode on and hit his head against it? We think not because, undoubtedly, no man of ordinary prudence would have made the attempt in that way.

The judgments of the District Court and Court of Civil Appeals are reversed, and the cause is here rendered for the plaintiff in error.

Associate Justice Hawkins dissents.

Mr. Justice HAWKINS delivered the following dissenting opinion:

The application for a writ of error in this cause presents only two assignments of error, which are as follows:

First: "The Court of Civil Appeals erred in holding that the District Court was correct in refusing to suppress the second deposition of J. M. Petty."

Second: "The Court of Civil Appeals erred in holding that the District Court was correct in refusing the following charge:

"'The jury are charged that J. M. Petty approached the bridge on horseback, he saw the bridge in a general way. Now if Petty saw the bridge and saw how high it was before he attempted to ride under it, then he assumed the risk of being able to ride under it in safety, and in such case he can not recover.'"

Neither is in the form of a proposition to the effect that the Court of Civil Appeals erred in not reversing the judgment of the District Court and rendering judgment in favor of the railway company in that the uncontradicted evidence shows that, even though the railway company was negligent in the matter of the bridge, Petty was himself guilty of contributory negligence as a matter of law, and, consequently, was not entitled to recover. The petition for a writ of error nowhere alleges that the judgment of the Court of Civil Appeals involved a fundamental error apparent on the face of the record, and I do not think it does. Said petition contains no "proposition" of that or any similar nature; in fact, it sets out no "proposition" whatever. See Rules for Supreme Court, No. 1.

The nearest other approaches which I have been able to find therein to a presentation or suggestion of any proposition or even a contention of the suggested character are where, (1) after making a quotation from the opinion of the Court of Civil Appeals in this case, it is said: "We submit that this is a renunciation by the court of its own prerogatives and its own duty in allowing a jury to determine the rights of parties where the facts are all admitted," which is hardly more than a criticism of that court, and (2) the closing statement, with reference to plaintiff's conduct, that "it seems to me that persons seeking to administer the law could not differ as to the characterization that conduct should receive." It seems evident, therefore, that the decision by the majority of this court herein rests upon a view of the case which was neither formally nor directly presented to this court by plaintiff in error. However, as that point does not go to the merits, it may be disregarded as comparatively unimportant.

For reasons stated in the opinion of the Court of Civil Appeals, I think that court did not err in overruling said first assignment, relating to depositions.

The general charge given to the jury embraced the following:

"By the term 'Ordinary Care,' as used in this charge, is meant such care as an ordinarily prudent person would exercise under the same circumstances. Negligence is a failure to exercise ordinary care. By the term 'Contributory Negligence' is meant some act of negligence on the part of the plaintiff which, concurring with some negligence on the part of the defendant, caused or contributed to cause the injury complained of. . . . If you find from the evidence that the plaintiff knew or by the exercise of ordinary care could have known that it was unsafe or dangerous to attempt to cross under said bridge on horseback, and that he was negligent, and this his negligence, if any, caused or contributed to cause the injury, if any, then find for defendant, and this, too, even though you find the defendant was negligent also."

The charge, as given, substantially and fairly presents the issue of contributory negligence as raised by the evidence, and of said charge the railway company makes no complaint.

The Court of Civil Appeals, therefore, it seems to me, committed

no error in holding that the trial court did not err in refusing to give said requested special charge, even if it be assumed to be (a) responsive to the evidence, and (b) a correct application of the law of contributory negligence, neither of which points need be decided now, since neither is material. Consequently, in my individual opinion, the judgments of both of the lower courts in favor of plaintiff should be affirmed, without further discussion.

However, my associates, having an entirely different view of the case, have decided it differently, on another ground, on which I feel duty bound to dissent, for reasons which I will indicate.

This appeal presents to this court no issue of negligence on the part of the railway company; such negligence is practically conceded. Consequently, although the opinion of the majority of this court, by Chief Justice Phillips, says, "Originally, it appears that the bridge was high enough above the road," I assume that their decision, which reverses the judgments of the Court of Civil Appeals and of the District Court and overturns the verdict of the jury, which was in favor of plaintiff, rests solely upon the holding in said opinion to the effect that, *as a matter of law,* plaintiff was negligent in the premises, and, therefore, is not entitled to compensatory damages.

Now, there being before this court no issue as to the negligence of the railway company, I do not consider the original height of the bridge necessarily material or relevant to the issue of contributory negligence on the part of plaintiff, and I do not understand that my associates do; but, if it is to be considered material to any issue before this court, I must say that I have searched the record in vain for any direct evidence as to its height originally, although there is some evidence which, by implication, might support a finding that, originally, it was high enough; but, on the other hand, there is evidence which might support the conclusion that the bridge was never high enough above the public road.

The witness Craver testified: "The bridge has been too low for about six months, it was caused to be too low by the sand washing in and settling under the bridge." Massey testified: "In 1909 I was county commissioner of the precinct including Harleton. . . . I went into office in 1908, about November; I found the bridge was too low at that time and took the matter up with Judge Lyttleton, the county judge, and asked him to see the railroad people and get them to raise the track. I met Mr. Votaw, superintendent of the road, on one occasion, and went out to examine the bridge with him; this was in the spring before Mr. Petty was injured, about March or April. A new bridge has been put in since that time. I had the promise of the railroad officials that they would raise the bridge. We had agreed that it was too low. I do not know why it was not fixed; at one time they promised me they would fix it. They had the people there to fix it at one time, but a wreck occurred up the road and the men had to go and clear the wreck. . . . Mr. Votaw contended that it was

the county's business to fix it; I did not agree with him as to that. I agreed that we would furnish him a team if he would pay for it and we would scrape out the dirt from under the bridge. He asked me about digging the place, I told him I would do that if he would pay for it. . . . Mr. Votaw, the railroad superintendent, and Mr. Prendergast were scheming there several times as to how to better the situation, and didn't get up any agreed arrangement until after Mr. Petty was hurt. All of these plans had been given up before Mr. Petty was hurt, except the plan to raise the track. Some time after Mr. Petty was hurt the track was raised at that place. . . . . The road slopes down each way to the railroad and fills in with dirt. The wagon road was there before the railroad was built."

Plaintiff testified that he was hurt on or about the 28th of September, 1909, at the crossing of the public road under the railway, a short distance above Harleton, and that "it is a plainly traveled public road and the trestle over same is not so high as they usually are." The witness F. H. Prendergast testified: "Mr. Votaw, superintendent, had me go there to see if I could fix up some method of bettering the crossing. . . . It was in the heat of summer." He also testified that several plans were considered, and that "in the meantime the man got hurt in September before we had accomplished anything."

Section 13 of the Bill of Rights, which is embedded in article 1 of the Constitution of Texas, perpetuating a provision of Magna Charta which was wrung by Englishmen at the point of the sword from a reluctant and tyrannical sovereign full seven centuries ago, declares, "The right of trial by jury shall remain inviolate," and it commands the Legislature to "pass such laws as may be needed . . . to maintain its . . . efficiency."

The present judiciary article of our Constitution, as amended in 1891, provides: "The Supreme Court shall have appellate jurisdiction only, except as herein provided, which shall be co-extensive with the limits of the State. Its appellate jurisdiction shall extend to questions of law arising in cases in which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe." Art. V, sec. 3.

"Courts of Civil Appeals shall have appellate jurisdiction, co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decisions of said courts shall be conclusive on all questions of fact brought before them on appeal or error." Art. V, sec. 6.

Article 1521, Revised Statutes, 1911, which was in force when the application for writ of error in this cause was filed and, therefore, should be considered in this connection (the Act of 1913, page 107, amending said article 1521, providing that it shall not apply, as amended, in cases in which the petition for writ of error was filed prior to

July 1, 1913), is as follows: "The Supreme Court shall have appellate jurisdiction co-extensive with the limits of the State, which shall extend to questions of law arising in all civil cases of· which the Courts of Civil Appeals have appellate but not final jurisdiction." Acts of 1892, page 19. ·

Article 1590, Revised Statutes, 1911, provides: "The judgments of the Courts of Civil Appeals shall be conclusive in all cases on the facts of the case."

Consequently, the power and authority of this court to disturb the findings of juries upon issues of fact is very limited, under our State Constitution and statutes.

For illustration: Under certain conditions our trial courts and also our Courts of Civil Appeals may overturn verdicts of juries upon what those courts may consider a preponderance of testimony, requiring a new trial before another jury, but of power or authority to do even that this court is utterly destitute. Choate v. Railway Co., 91 Texas, 406, 44 S. W., 69. See also Thomas v. Morrison, 92 Texas, 329, 48 S. W., 500; Burgess v. W. U. Tel. Co., 92 Texas, 125, 71 Am. St., 833, 46 S. W., 794.

And this court, in a clear and forceful opinion by former Chief Justice Gaines, declared that "whether there be any evidence or not to support an issue is a question of law and not of fact," and that only when such "question of law" is presented is the decision of a Court of Civil Appeals upon a question of fact "subject to review by this court." Choate v. Railway Co., supra.

In keeping with the letter and spirit of the foregoing constitutional and statutory provisions, which have been ordained for our guidance and control, such slight authority over jury verdicts as we do possess should be exercised with the utmost caution; and this court should, I think, hesitate long to reverse and render where, as in a case like this, the testimony, though undisputed, leaves the point in issue so obscure, and where the jury verdict which is being so nullified is the second in the case for the same party upon the same issue of fact, and has been affirmed by a Court of Civil Appeals.

About the purpose, design and· binding force of said foregoing provisions, and about the rule concerning jury verdicts which is applicable to this court, as above stated, there exists, so far as I know, neither divergence of opinion, anywhere, nor room for any, abstractly; but, concretely, in applying said provisions of organic and statutory law, and said controlling principle limiting the right of this court to disturb a jury verdict, occasional differences in opinion have arisen, as in this case. But, ·just at this point arises what I consider the grave importance, both in the case at bar and as a matter of precedent, of a correct application of those acknowledged principles; because, in the final analysis, constitutions and statutes are alike dead and meaningless except as they are rendered vital and ·potent by the breath of actual judicial application thereof to practical affairs, in addition to mere

theoretical interpretation. There are, of course, cases involving an issue on contributory negligence in which arise the right and the corresponding duty of this court to exercise its power of overturning a jury verdict, upon the theory that, under the undisputed evidence, and as a matter of law, plaintiff's own negligence contributed to his injury, barring recovery; but I am unable to assent to the view of my associates that this case is one of that character.

A jury verdict upon an issue of fact can be overturned properly by this court, for insufficiency of evidence to support it, only when it is literally unsupported by any evidence which fairly might sway a reasonable mind; and that, I think, is the settled law of this State. It seems clear, under recognized authorities generally and former decisions of this court, that if reasonable minds might differ as to whether a person of ordinary prudence, under the circumstances in which plaintiff was placed, would have attempted to ride under the bridge when and as he undertook to do so, the question whether in doing so he was negligent or not is one for a jury, and ought not to be determined by this court as a matter of law.

In determining whether a given state of facts constitutes contributory negligence as a matter of law, the authorities seem to support the following propositions:

1. Where the evidence bearing upon the issue is contradictory, the question is, solely, for the jury, and can not be determined by the court.

2. Where the evidence bearing upon the issue is uncontradicted, yet is of such a nature that the minds of reasonable men might differ as to its effect, the question must be left to the jury for determination.

3. Where the evidence bearing upon the issue is uncontradicted, but is of such nature that the minds of all reasonable men would, necessarily, reach the same conclusion as to its effect, there is presented, for the determination of the court, the pure question of law as to whether or not such undisputed facts constitute contributory negligence.

In Thompson's Commentaries on the Law of Negligence, volume 1, section 426, it is said:

"In the courts of the United States, it is frequently said that the trial court is bound to submit the case to the jury, unless no recovery could be had upon any view that could properly be taken of the facts which the evidence tends to establish. Substantially the same theory has been expressed by the Supreme Court of Iowa thus: 'If the facts are such that but one conclusion can reasonably be drawn from them, it is the province of the court to determine that conclusion. But, if different minds might reasonably reach different conclusions from them, the parties are entitled to have the question determined by the jury.' The meaning is that, in many cases, the evidence will speak unequivocally in favor of the conclusion that the person killed or injured was guilty of contributory negligence, in which case the conclusion will be declared by *the court as matter of law*. . . ."

Beach on Contributory Negligence, section 162, uses this language:

"What amounts to negligence is, as we have already seen, a question of law. It is for the court to say, in a majority of instances, what is, and what is not, negligence as an abstract proposition. When, therefore, the facts of a given case are undisputed, and the inferences, or conclusions to be drawn from the facts, indisputable; when the standard of duty is fixed and defined, so that a failure to attain it is negligence beyond a cavil, then contributory negligence is matter of law. In such a case there would be nothing for the jury to decide. The case has decided itself, and it only remains to the court to declare the rule. When the facts are unchallenged, and are such that reasonable minds could draw no other inference or conclusion from them, than that the plaintiff was, or was not, at fault, then it is the province of the court to determine the question of contributory negligence as one of law, and when the case is all against the plaintiff, there may properly be a nonsuit; but, in the language of Mr. Field, 'to justify a non-suit on the ground of contributory negligence, the evidence against the plaintiff should be so clear as to leave no room for doubt, and all material facts must be conceded, or established beyond controversy.' "

Mills v. Missouri, K. & T. Ry. Co., 94 Texas, 242, 55 L. R. A., 497, 59 S. W., 874, was a suit for damages on account of injuries received while attempting to board a moving train. The full findings of fact are too extended to be quoted here, but embraced therein were the following findings:

"The speed of the train had gradually increased while the plaintiff was passing around the station, but some of the evidence tends to show that it was still moving very slowly, and to plaintiff as well as to some of the bystanders, it appeared easy to step upon it. While the conductor and a number of bystanders saw plaintiff about to enter the car, the evidence would have warranted the jury in finding that none of them warned him. Although the train was moving, the gate or door was open where plaintiff attempted to enter, and some person immediately preceded him, going upon the train. While waiting for this person to get aboard, plaintiff walked along with the train, grasping the railing around the platform with one hand and holding a light valise in the other, and finally stepped with one or both feet upon the step as the train was near the southern end of the platform, and was pulled or thrown around against the car and fell to the ground beyond the platform."

The railway company contended that the acts of plaintiff constituted contributory negligence *per se,* and that, consequently, he was not entitled to recover. Upon that point this court, through Mr. Justice Williams, said:

"Whether or not negligence of the defendant constituted a proximate cause of the plaintiff's injury must be determined from a consideration of everything that happened. It would be a mistaken way of viewing the evidence to take separately each act or omission which may be found to have been negligent and inquire if it alone constituted the

proximate cause. The combined effect of all may be considered, and when this is done, and if it be also found that no negligence of plaintiff caused or contributed to the result, we think it can not be said as matter of law that there was not the proper causal connection between the conduct of defendant and the injury to plaintiff. This court has steadily refused to hold that an attempt to get upon a slowly moving train is negligence per se. The question must be, whether or not, under the peculiar circumstances of the case, which are rarely, if ever, the same in two cases, it was negligence to make the attempt, and, except in cases where the evidence is so clear as to admit of but one answer to a rational mind, the question must be left to the jury. Without further comment upon the evidence, we find it necessary to say only that we do not regard this as one of the exceptional cases."

Lee v. Railway Co., 89 Texas, 583, 36 S. W., 63, was a suit for damages resulting from the death of Louis Lee, caused by negligence of the railway company, one of the defenses pleaded being contributory negligence, constituted by his placing his foot in an unprotected frog of a switch. Initial negligence of the railway company was established. Upon a trial before a jury judgment went against the railway company, which appealed. The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause, saying:

"The use thereof (track) as a footway was not negligence of itself, and the circumstances under which he went upon it are merely evidence upon the issue of contributory negligence. . . . Giving full effect to the verdict upon the testimony before the jury, the accident resulted from the fact that Lee's foot was caught in the switch, but the evidence shows that it was caught under such circumstances as to imply negligence on his part, and fails to develop facts as to how it got caught, or to show that deceased was exercising proper care at the time. He was well acquainted with the yard, the location of the switch, and condition of the track. It was dark at the time, and it does not appear that the place was at all lighted. The conclusion necessarily follows that the deceased came to his death by his own negligence."

The findings of fact by the Court of Civil Appeals showed that for several years, in going to his home from the city, the injured man, by consent of the railway company, had passed along the track and was familiar with the yard and the location of the tracks, switches and frogs, including the unblocked frog in which his foot hung. The opinion of the Court of Civil Appeals was to the effect: (1) That down to the point when Lee reached the frog a jury might find that he was not guilty of negligence; yet (2) when he stepped into the frog in a manner which was unexplained, the question ceased to be one of fact, and became one of law, and, consequently, the jury would not be permitted to find that a man of ordinary prudence, under the circumstances, would have taken the same step.

This court held said first conclusion sound and the second unsound, saying:

"Up to the point when he reaches the frog, a jury might find that he was not guilty of negligence, and the court may not take the question from them. . . . There is neither proof nor presumption of law that deceased was negligent in taking that step, and we can not see how it can be said that he was negligent in the act of stepping into the frog. Being there he must step somewhere, and, seeing the train coming, he would naturally step off the track, when it may be by misfortune he got his foot fastened in the frog. These facts to our minds strongly indicate negligence, but they are not so conclusive as to exclude a difference of opinion among ordinary men as to whether the deceased did what a man of ordinary prudence would have done at that time and under like circumstances, and they did not warrant the holding as matter of law—a necessary conclusion—that deceased was negligent in taking that step; in so holding, the Court of Civil Appeals was in error."

In the Lee case there was a period of time, beginning just before the man who was injured reached the frog and ending just after his injuries occurred,—a veritable chronological zone of uncertainty—embracing the act of immediately approaching and stepping into the unblocked frog and the impact of the on-rushing train, a zone which was but dimly illuminated by the evidence in that it failed to show definitely or specifically just how it happened that the foot got caught, resulting in the injury; yet the District Court, and the Court of Civil Appeals and this court all held that, down to the beginning of that zone, Lee was not negligent, being there by permission, and, therefore, rightfully, although for seven years he had walked that path and knew of the location of the railway tracks and switches and of that particular open frog; and, whereas, the Court of Civil Appeals, contrary to the view of the District Court, held that thereafter, and within that uncertain zone, Lee was negligent as a matter of law, this court, upon that point, although declaring that "the facts to our minds strongly indicate negligence," held, with the District Court, that, nevertheless, they did not constitute negligence as a matter of law.

Likewise, in the case at bar, the evidence creates and leaves in the shadow a chronological zone of uncertainty, extending from the time when Petty first saw the bridge in a general way and the tracks leading towards it until just after the accident occurred, and embracing his acts of immediately approaching and riding under the bridge and the impact of his head and neck against the timbers, resulting in his injuries; and, in the case at bar, it is admitted by the majority of this court, as was held in this cause by the District Court and the Court of Civil Appeals, that Petty was not negligent down to the beginning of that time zone; and, pursuing the analogy between the two cases, I think that, inasmuch as the evidence in this case fails to show definitely or specifically that at any moment or instant within that zone, which the evidence leaves in uncertainty, Petty acted otherwise than as an ordinarily prudent person would have done, and even though some or

all of the members of this court might think the undisputed facts "strongly indicate negligence," this court ought to hold herein, as it held in the Lee case, that the question of contributory negligence is one for the jury and not purely a question of law to be determined by this court.

In Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas, 547, 7 S. W., 228, this court, through Associate Justice Gaines, afterwards Chief Justice, having stated the facts, which included knowledge by plaintiff of the defective condition of the railway bridge, said:

"It is now assigned as error that the verdict of the jury is contrary to the evidence, because the testimony shows 'that the plaintiff was guilty of contributory negligence in attempting to ride across a bridge that he knew was defective and dangerous.' The issue of contributory negligence was submitted to the jury, and has, by the verdict, been determined in plaintiff's favor. This is conclusive of the question, unless we can say that the act of plaintiff was negligent in law, or at least that it tended so strongly to establish negligence on his part that the verdict should not be permitted to stand. According to the rule in this court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it. It is apparent that this can not be said of the plaintiff's conduct in this case. . . . If the passenger or traveler have no other convenient way, the mere fact that he takes the chances of a known danger and attempts a passage, is not controlling proof of his negligence. Whether the act be negligent or not depends upon the circumstances attending it; and the question is for the determination of the jury. (City Council of Montgomery v. Wright, 72 Ala., 411; City of Huntington v. Brun, 77 Ind., 29; County Commissioners v. Burgess, 61 Maryland, 29; De Wise v. Bailey, 131 Mass., 164; Dosley v. Menden, 44 Conn., 117; Evans v. Utica, 69 New York, 166; Templeton v. Montpelier, 56 Vt., 328; Loewer v. Sedalia, 77 Mo., 431; Reed v. Northfield, 30 Mass. (13 Pick.), 94; Osage City v. Brown, 27 Kan., 74; City of Aurora v. Hulman, 90 Ill., 61. In De Wise v. Bailey, supra, the Supreme Court of Massachusetts say: 'We think the law in a case of this kind is, that only when the nature of the obstruction is such that the court can say that it is not consistent with reasonable prudence and care, that any person having knowledge of the obstruction would proceed to pass over it in the manner attempted, can the court rule that such knowledge prevents the plaintiff from maintaining his action.' In County Commissioners v. Burgess, supra, the Maryland court use this language: 'In this case the knowledge of the plaintiff was some evidence of negligence proper to go to the jury to be considered by them in conjunction with the condition of the bridge of which he had knowledge, and to be found a bar only in case they found the bridge from the proof to be wholly unfit for use, and he knew its true con-

dition.' This language recognizes the correct rule and is strictly applicable to the case now before us. The defendant by showing that many persons habitually used the bridge with safety, proved that a mere attempt to cross it was not conclusive evidence of negligence."

In Cartright v. Canode, 106 Texas, 507, 171 S. W., 696, this court, through Chief Justice Brown, said:

"This court can not reverse a judgment because the preponderance of the evidence is against the jury's conclusion. The rule by which this court must be governed is well stated thus: 'Where a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the courts.' That authority is sustained by courts generally. Baltimore & Ohio R. R. Co. v. Emma Griffith, 159 U. S., 603, 16 Sup. Ct., 105, 40 L. Ed., 274; F. B. Choate v. San Antonio & Aransas Pass Ry. Co., 90 Texas, 82, 36 S. W., 247, 37 S. W., 319. . . . If the jury, in an honest and impartial effort to arrive at the truth, might have reached the conclusion embodied in this verdict, this court can not set it aside. In considering this question, we must take into account all of the facts and circumstances attending the transaction."

In International & G. N. R. Co. v. Vallejo, 102 Texas, 70, 113 S. W., 4, this court said:

"If there is any evidence in this case which tends to prove negligence on the part of the railway company that caused the injury, then an issue of fact was made to be decided by the jury, and of which this court has no jurisdiction."

In a later case, after quoting the next foregoing excerpt approvingly, this court, through Mr. Justice Dibrell, finely said:

"So far as this court is clothed with power, if there is in any given case evidence establishing or tending to establish an issuable fact, the finding of the jury is a sealed book which may not be opened without doing violence to a well fixed rule of jurisdictional limitation." Railway Co. v. Boone, 105 Texas, 191, 146 S. W., 535.

In Texas & P. Ry. Co. v. Murphy, 46 Texas, 356, 26 Am. Rep., 272, this court, through Chief Justice Roberts, said:

"Negligence, in one sense, is a quality attaching to acts dependent upon, and arising out of, the duties and relations of the parties concerned, and is as much a fact to be found by the jury as the alleged acts to which it attaches by virtue of such duties and relations. . . . In the absence of any such law defining the acts which constitute negligence, it is a fact to be found by the jury, upon evidence, as any other material fact. . . . Ch. J. Cooley, in a very able and searching review of the cases upon the subject of contributive negligence, says that 'Negligence consists in a want of that reasonable care which would be exercised by a person of ordinary prudence, under all existing cir-

cumstances, in view of the probable danger of injury.' 'As a general rule, it can not be doubted that the question of negligence is a question of fact, and not of law.' And while admitting that there are plain cases, in which it has been held that the judge may rightfully instruct the jury, as matter of law, that the action can not be maintained, he says: 'The case, however, must be a very clear one, which would justify the court in taking upon itself this responsibility.' 'But while there is any uncertainty, it remains a matter of fact for the consideration of the jury.'"

See, also, Martin, Wise & Fitzhugh v. Texas & P. Ry. Co., 87 Texas, 122, 26 S. W., 1052; Texas & P. Ry. Co. v. Miller, 79 Texas, 78, 11 L. R. A., 395, 23 Am. St., 308, 15 S. W., 264; Bennett & Lovell v. Missouri, K. & T. Ry. Co., 11 Texas Civ. App., 423, 32 S. W., 834; Adams v. Galveston, H. & S. A. Ry. Co., 164 S. W., 855; Rose's Notes on Texas Reports (1910 ed.), vol. 3, p. 731.

In City of Denison v. Sanford, 2 Texas Civ. App., 661, 21 S. W., 784, our Court of Civil Appeals for the Second District, through Associate Justice Head, said:

"Appellant, in its first assignment of error, complains of the action of the court below in overruling a special exception interposed by it to appellee's original petition, on the ground that such petition did not allege that she did not have notice of the defective condition of the crossing prior to her injury, but, on the contrary, affirmatively shows that she did have such knowledge. We do not construe the petition as showing affirmatively that plaintiff had notice of the defective condition of this crossing, nor do we believe that the petition was defective in failing to aver affirmatively that she did not have such notice. The law applicable to this case is not that which pertains to the relation of master and servant, under which it is held that the servant assumes the risk from defects of which he had notice, but it is to be decided according to the rules of law applicable to the duty a city is under in reference to its streets for the protection of the public, who sustain no contractual relation to it. In such cases it is well settled in this State that knowledge of the defect by an injured traveler prior to the injury is not conclusive evidence of negligence on his part. The question of contributory negligence thus raised is one for the jury under the circumstances of the particular case. Railway Co. v. Gascamp, 69 Texas, 547, 7 S. W., 227; City of Galveston v. Hemmis, 72 Texas, 558, 11 S. W., 29, 13 Am. St., 228; City of Austin v. Ritz, 72 Texas, 391, 9 S. W., 884."

In St. Louis S. W. Ry. Co. v. Smith, 49 Texas Civ. App., 7, 107 S. W., 638, in which this court denied a writ of error, our Court of Civil Appeals for the Fifth District, speaking through Associate Justice Talbot, referring to article 4466, now article 6485, Revised Statutes, 1911, and to article 4435, now article 6494, both of which are hereinafter quoted, in whole or in part, held:

"Where a railroad is constructed across a public road or highway, already established, the duty of the railway company, under the statute to keep the crossing in repair, is absolute. Such was the fact in this instance, and as the bridge was a part of the crossing, the court correctly framed its charge so as to impose such duty. It has been so held by the appellate courts of this State. Railway Co. v. Warner, 88 Texas, 642, 32 S. W., 868; id. (Texas Civ. App.), 31 S. W., 66; Railway Co. v. Belt, 24 Texas Civ. App., 281, 59 S. W., 607. . . . The third assignment of error complains of the following charge: 'But if you find from the evidence that plaintiff knew of the hole in the bridge before or at the time of the injury, and you further believe that a person of ordinary prudence situated as the plaintiff was, and with the knowledge he had of the condition of the bridge, would not have stepped into said hole, then you will find for the defendant.' This charge is assailed on the ground that it is confusing and misleading; that if plaintiff actually knew that the hole was in the bridge he was guilty of contributory negligence in going on the bridge and stepping into the hole, and, therefore, the charge erroneously submitted the issue of his negligence as a disputed fact; that it erroneously submitted to the jury as a disputed question of fact whether a person of ordinary prudence would have stepped into the hole in the bridge, when, as a matter of law, under the facts of the case, a person of ordinary prudence would not have done so. The charge is probably subject to criticism. But the proposition that if appellee knew the hole was in the bridge he was guilty of contributory negligence, as a matter of law, in going upon the bridge and stepping into the hole, is not correct. The public road, passing over appellant's track at the crossing where appellee was injured, was the only convenient or practicable route, so far as the testimony shows, leading to Massey's house, and because appellee may have known that the hole was in the bridge (which, however, he denies), he was not for that reason compelled to refrain from going to the party to which he had been invited, and from the use of the crossing on his return home. The mere attempt to cross the bridge, with knowledge that the hole was in it, was not conclusive evidence of negligence. Many people habitually passed over the crossing, and it was not shown that any one, except appellee, had been injured in doing so. Whether his acts in going upon that part of the bridge where the hole was situated and stepping into it, under the circumstances, constituted contributory negligence on the part of appellee, was a question of fact raised by the evidence, for the determination of the jury. Railway Co. v. Gascamp, 69 Texas, 545, 7 S. W., 227."

Assuming, however, under the view of my associates, that plaintiff's alleged contributory negligence is to be further considered by this court, its action thereon should be determined, I think, from a full and careful consideration of the physical conditions and the attendant circumstances at the place and time of the accident, or "collision," and with due regard to plaintiff's right to rely upon (a) antecedent and contem-

poraneous compliance by the railway company with the requirements of law relative to the construction and maintenance of the bridge and the crossing underneath it, and (b) the custom of the country relative to the height of bridges over public roads; and the action of this court thereon should not be controlled by merely the physical facts that the injury occurred in the daytime, that plaintiff was not blind but saw the bridge, and was riding slowly, and the clear space under the bridge was insufficient to permit of plaintiff's attempted passage through it in the posture in which he attempted it.

In the application for a writ of error it is said by the able counsel for the railway company: "It is not a question of the sufficiency of the evidence to establish a given fact, but the question is whether the facts stated by the witness make out a case of the exercise of care by the witness himself." That assumes that Petty carries the burden of proving that he was not negligent; whereas, the initial negligence of the railway company being established, its defensive plea of contributory negligence of Petty imposed upon it, and not upon him, the burden of proof on that issue. Lee v. International & G. N. Ry. Co., 89 Texas, 587, 36 S. W., 63, citing Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152, 28 L. R. A., 538, 30 S. W., 902. Consequently, in testing the soundness of said decision of this court in the case at bar, the question really is: Does the testimony of Petty show that he was negligent *as a matter of law?* In determining that point it should be constantly remembered that there are many cases "where there is not a conflict of evidence, and yet the ultimate fact is to be determined by the jury."

It is true that as plaintiff rode under the bridge he was leaning forward slightly, but he was aged, and in the evidence there is nothing to show that he was not accustomed to riding in that posture, or to suggest, necessarily, that he was leaning forward to avoid striking his head against the bridge.

It is also true that, on that occasion, at some time before plaintiff's head struck the bridge, he saw the bridge, but the evidence absolutely fails to disclose, or even to indicate, just where he was, with reference to the bridge, when he saw it.

The general effect of plaintiff's testimony seems to me to be such as to at least authorize a jury to find, even if insufficient to require a court to find and hold, as a matter of law, that although he saw the bridge and the road under it, he saw them in only a general way, and did not make, or attempt to make, even with his eye, any accurate measurement or estimate of the space between them, and did not realize, until too late to prevent the accident, that said space would not admit of his riding under the bridge, in said posture, without striking it, and that he awoke to a realization of the insufficiency of such space only when his head struck the bridge.

Our Revised Statutes of 1911, relating to the rights and duties of railway corporations, provide:

"Art. 6485. Such corporation shall have the right to construct its road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike, or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

"Art. 6494. It shall be the duty of every railroad company in this State to place and keep that portion of its roadbed and right of way over or across which any public county road may run, in proper condition for the use of the traveling public."

Plaintiff, therefore, had a right to assume, and doubtless did assume, as I think any reasonably prudent person might, in the absence of information to the contrary, that the clear space under the bridge was sufficient to admit of his unobstructed passage while sitting erect upon his horse. Taylor, B. & H. Ry. Co. v. Warner, 88 Texas, 642, 32 S. W., 868; San Antonio & A. P. Ry. Co. v. Belt, 24 Texas Civ. App., 281, 59 S. W., 607; St. Louis S. W. Ry. Co. v. Smith, 49 Texas Civ. App., 1, 107 S. W., 638. Moreover, customarily, railroad bridges and other bridges over public roads are of sufficient height, and the openings beneath enough, to admit of such passage; and from that fact, which is within the common knowledge of all, plaintiff had a right to assume, and doubtless did assume and believe, that even in that posture he could in safety ride under the bridge. Furthermore, the uncontradicted evidence of plaintiff is to the effect that he saw in the road horse and wagon tracks ahead of him, leading under the bridge, by which he was induced to think it safe for him to attempt to ride under it in the posture in which he essayed to do so.

Consequently, plaintiff having such double right to assume and such triple inducement for supposing that the bridge was high enough,—that the clear space under it was sufficient,—and so supposing, according to his uncontradicted testimony, and having no information to the contrary, I am not prepared to say, and I do not believe that, necessarily, or, as a matter of law, it was incumbent upon him to make a closer inspection of the premises before riding under the bridge, and that in essaying to ride under it when and as he did he did so at his peril, and that all reasonable minds must agree that in so doing he was guilty of negligence which contributed to his injury.

Referring to the bridge and plaintiff, said opinion says:

"With it as low and his head as high as the testimony establishes, in an attempt to ride under it, a collision, without effort on his part to avoid it was inevitable, as in fact occurred."

That is true, as has now been demonstrated by plaintiff's attempt to ride under the bridge; but it must be remembered that when plaintiff made that attempt it was not then a demonstrated fact, present in his mind, as it is now a demonstrated fact upon the record before us, but,

on the contrary, the uncontradicted evidence as I view it is that plaintiff was not then in possession of that knowledge, which the majority of this court have thus brought to bear in support of their conclusion that it was negligence, as a matter of law, upon plaintiff's part, for him to ride under the bridge without stooping or leaning over enough to avoid striking it.

Said opinion also declares that "it was bound to have been manifest to him when he actually got to the bridge . . . that if he kept on in that position his head would strike it," and the predicate or reason assigned therein for that conclusion of fact is, "since it was then right before his eyes"; but I find in the record no testimony whatever showing conclusively, or even tending to show, as I view it, that when plaintiff got to the bridge it was then "right before his eyes," in the sense that he was then looking at or toward it, but, on the contrary, plaintiff's uncontradicted evidence tends, I think, to show, and certainly the fact that his head actually struck the bridge with such force as to painfully injure him tends, strongly, to show that he was not looking at or toward the bridge as he rode under it. And, along with the demolition of said predicate or reason for said conclusion, falls, also, I think, said conclusion itself, to the effect that it was "manifest" to plaintiff when he got to the bridge that if he kept on in that position his head would strike it.

Of course, if it be conceded, or assumed, or held that said status or impending consequence actually was "manifest" to plaintiff as he got to the bridge, his act in riding under the bridge would, indeed, be analogous "to a man's act in walking up to an obstruction which is seen and is necessarily known will strike him if he goes on"; but not otherwise. And it is just at this point, I think, that my associates have fallen into error and have, it seems to me, assumed against plaintiff a state of facts which is not supported by the record.

What I consider an assumption of the facts of the case against plaintiff is brought sharply into view by that portion of the majority opinion wherein, while conceding that plaintiff had a right to the use of the public road beneath the bridge, and that "a mere attempt to ride under the bridge, even with knowledge that it was as low as it was, would not itself establish that he was negligent," nevertheless declares: "But that is not the question here. It is, could he, seeing the bridge, ride up to it in a walk, thereby, before passing under it, necessarily reaching a position where it was obvious that he would strike it unless he lowered his head, and, with no evidence showing that his attention was in any way distracted or that he made any effort to avoid striking it, be entitled to damages because he rode on and hit his head against it?"

Said concession merely recognizes the existence of a rule which is well settled by the decisions of this court. Starting, then, where said concession ends, we come at once upon grounds upon which the difference of opinion in this court arises; and just there I ask, when, if at all, did plaintiff first actually become aware of the fact that the bridge

was too low, and where, with reference to the bridge, was he then? And, if he became aware of that fact only in the instant of impact, as I think the jury were justified by the evidence in believing, at what particular point, in place and time, if at all, did it become negligence, *as a matter of law,* for him to proceed upon his journey along the public road, as he did, without having discovered, earlier. and in time to prevent the accident, that the bridge was too low?

The evidence discloses, it seems to me, several aspects in which, and as many viewpoints from which, the jury might consider the matter, and from which, upon the whole, they might fairly conclude and find, either that plaintiff was, or that he was not, negligent in riding under the bridge as he did. For instance, it was, I think, pertinent and proper for the jury to ·consider and determine, (1) whether plaintiff did or did not see and closely and carefully notice the bridge as he rode immediately up to and under it; and (2) if he did not, whether a reasonably prudent man, under such circumstances, would or would not have noticed that more or less dirt had been washed into the road under the bridge, lessening the clear space between them, and whether he would, therefore, have been alert and watchful as he rode immediately up to or under the bridge, with a view to ascertaining, accurately, whether said clear space was or was not sufficient to admit of his riding under the bridge, in the posture in which he approached it, without striking it, and would so have discovered that he could not safely do so, and would, therefore, have refrained from the attempt to ride under it.

Upon the theory that the question of plaintiff's negligence was not purely one of law, the District Court has twice submitted said issue to the jury, charging upon said issue of contributory negligence, and in each instance the jury has found that plaintiff was not negligent in the premises. Upon the first appeal the Court of Civil Appeals cautiously refrained from expressing any opinion upon the railway's contention there "that appellee, under the evidence, should be held guilty of negligence as a matter of law," expressing doubt upon that point; but saying, however:

"Such condition of the crossing existing and being open and obvious, and assuming that it should not be said as a matter of law that there was contributory negligence, clearly there was presented a sufficiency of circumstances to have the jury say, under proper instructions, whether under all the circumstances of the case appellee knew, or by reasonable care could have known, that it was unsafe or dangerous to go under the· trestle on horseback." 134 S. W., 407.

The judgment of the trial court was then reversed upon other grounds.

The above mentioned doubt appears to have been dispelled from the minds of the Court of Civil Appeals before its decision upon this second appeal of the case was rendered, a portion of its opinion therein, by Associate Justice Hodges, being as follows:

"It must be conceded that the appellee was aware of the proximity

of the bridge and that he had to pass under it. He must, therefore, be charged with such knowledge of its distance from the ground as a general observation by a man of his age and condition would, in the exercise of ordinary prudence, be expected to obtain. The issue of contributory negligence must then be determined by what a person of ordinary prudence, in the same situation, would have done. If, knowing the situation, the danger was so imminent that a person of ordinary prudence would not have undertaken to ride under the bridge, then the appellee would not be entitled to recover, for the reason that he would be guilty of contributory negligence as a matter of law. The issue was submitted to the jury in a charge of which no complaint is made. We can not say that the appellee took a hazard which ordinary prudence forbade, that was a question for the jury to determine from all the facts and circumstances involved in the case. Railway Co. v. Gascamp, 69 Texas, 545, 7 S. W., 227; Lee v. International & G. N. Ry. Co., 89 Texas, 588, 36 S. W., 65; Denison v. Sanford, 2 Texas Civ. App., 661, 21 S. W., 785."

The views of the two district judges and of twenty-four jurors, and of the three members of the Court of Civil Appeals, and of this writer are, of course, not of controlling effect as against the views of a majority of this court; but I venture to respectfully suggest that, when contrasted therewith, said views at least indicate the existence of a difference of opinion among reasonable minds upon the question of plaintiff's alleged contributory negligence.

In discussing the effect to be given to the views of trial courts and intermediate appellate courts, as related to the issue of negligence, the Supreme Court of the United States, through Mr. Justice Brewer, said:

"The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment. And if such judgment is approved by the proper appellate court, this court, when called upon to review the proceedings of both courts, will rightfully be much influenced by their concurrent opinions." Patton v. Texas & P. Ry. Co., 179 U. S., 658, 45 L. Ed., 361, 21 Sup. Ct., 275.

Certainly the same rule should apply in a case wherein the trial court and an intermediate appellate court are of the view that not all of the evidence is in favor of one party, but that the evidence requires that the issue of contributory evidence be submitted to the jury.