MASTERSON et al. v. PANHANDLE & S. F. RY. CO. et al. (No. 1136.)

(Court of Civil Appeals of Texas. Amarillo. March 14, 1917.)

MUNICIPAL CORPORATIONS ☞803(1)—INJURY FROM STREET DEFECTS—CONTRIBUTORY NEGLIGENCE—CARE REQUIRED.

Where plaintiff drove along a dim road near defendant's tracks instead of one well traveled, which would have equally served her purpose, and, failing to watch the road, was thrown out by the buggy hitting a steel boundary post plainly visible and four feet from the roadway, a finding of contributory negligence *held* justified.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1673.]

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Suit by Mrs. T. C. Masterson and others against the Panhandle & Santa Fé Railway Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Y. W. Holmes and W. W. Kirk, both of Plainview, for appellants. Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellees.

HALL, J. Appellants. sued for personal injuries to Mrs. Masterson, alleging that defendants had placed in a zigzag course at the corners of the lots included in its property along each side of its right of way for more than a mile entirely through the town of Hale Center certain posts, made of steel rails, which stood above the ground 2 or 3 feet; that practically all that part of the town of Hale Center is level plains land and uninclosed; that one of said steel posts was placed too near a road commonly used by the public; and that while Mrs. Masterson was driving in her buggy, traveling such road, an axle came in contact with said steel post, and she was thrown out of the buggy and injured. The special answer of the defendant railway company is as follows:

"For further answer herein and by way of special answer, the defendants say that the plaintiff was herself negligent, and her own negligence was the intervening and proximate cause of any injury which she may have sustained, if in fact she sustained any injuries, in that she was at the time and just prior to said accident driving her horse in a careless manner, and not watching the horse or road, or paying any attention to objects along the road, but had her attention directed away from said horse and road, and her own carelessness and negligence in this respect became and was a contributing cause to such injury as she may have received, without which said accident or injury would not have occurred. Plaintiff Mrs. Masterson was further negligent in traveling said road with knowledge that said post was located as it was, and that it was dangerous to travel said road, if in fact it was dangerous as alleged, and her own negligence in this respect was the proximate cause of her injuries."

It appears that the town of Hale Center is plotted with streets running due east and west, and north and south. Appellee's line of railway enters the town plot near its northeastern corner, and runs in a southwesterly direction through the town. The agreement under which the company acquired its right of way through the town specifies that when the right of way shall include any portion of any lot that said company shall have the entire lot, resulting in the lines of its property running in a zigzag course on each side of the right of way. In order to mark the lines of its property the company set at the outside corners of the several lots acquired under this agreement posts cut from common steel rails, and painted the posts white. Mrs. Masterson resided a little north of west of the place of the accident and beyond the business section of the town from the railroad. On the day in question she intended to visit at the home of a Mr. Cagle, who lived southeast of the place of the accident. Appellee's depot was situated near where the accident occurred. Mrs. Masterson was driving a gentle buggy mare, with a colt about four months of age following. She crossed the railroad on a street northeast of the depot, and after driving far enough east to pass the line of posts started in a southwesterly direction, parallel with the railroad track. The testimony shows that the steel posts were something near 20 inches high, or high enough to catch the axle of a buggy if the driver should attempt to drive over them. The record shows that there were three crossings inside the town plot on streets running east and west—the first located north of the section house a fourth of the way down the railroad from the northeast corner of the town; the second being between the section house and the depot, and one block north of the depot; and the third crossing the track three blocks south of the depot. It appears that that part of the town lying southeast of the depot and between the right of way and Cagle's house is open, unfenced prairie land, except an orchard occupying a part of a block lying between the Cagle home and the depot, and that vehicles could have been and were frequently driven at liberty over any portion of this section of the town. It appears that the crossing north of the depot, and the one which was used by Mrs. Masterson on this occasion, was the best of the three crossings, and the one most commonly used. Mrs. Masterson testified in substance that she had lived in Hale Center about 2½ years;

that the day before Thanksgiving, and about 4 or 5 o'clock in the afternoon, while going in her buggy to Jim Cagle's, who lived on the east side of the railroad, the accident occurred; that she was driving a perfectly gentle mare—one that was easily controlled; that the mare's four months old colt was following the buggy; that she crossed the railroad at the first crossing north of the depot, and passed down the road towards Cagle's; that the first she knew, at the time of the accident, was that she felt herself going head-foremost over the left; that she did not know where the railroad crossing south of the depot was located; that she had never crossed it and did not remember of having heard that there was one down there; that she had never been to Cagle's house before; that though she had been in that neighborhood visiting the Yates house, and had traveled the same road in going to his house that she was traveling in trying to reach Cagle's; that she had been in that part of the town several times before the accident, and always traveled the same road, and had seen the posts which stood up about 30 inches, and were painted white; that at the time of the accident she knew the posts were scattered all up and down the railroad track, and had driven before right where the accident occurred; that she had not thought of its being dangerous; that she had a gentle mare, and always tried to do careful driving.

"Q. If you had considered it dangerous would you have thought so at the time you were driving along there? A. Yes, sir; but I did not realize that it was dangerous because I had a gentle horse, and I always tried to keep in the road, and had never had any trouble. Q. At this time, if you had thought it was dangerous you would have gone further out from the road, would you not? A. Well, I was driving carefully, and not giving special attention as to whether I was going to get hurt; that is, it never entered my mind that I was going to get hurt."

In this connection, she stated that she always watched the road and watched out for anything that might break the buggy or hurt herself, but as to watching the post or thinking about it being dangerous, she had not done that. She was then asked about watching for the post at this particular time when the horse and buggy left the road. She answered:

"I hardly realized she was gone out. She never gets frightened, and she did it so easily I didn't notice it; that when the mare did it I was watching her and the colt as best I could; that I was not looking behind; I was trying to watch the horse and the colt at the same time. Q. Did the horse turn immediately out at right angles? A. I didn't notice it; she just did it so gently and easily I didn't notice it, and I did not realize she was out."

The witness further stated that the mare had to get out of the road about 2½ feet to hit the post; that she did not remember seeing the post before in driving there or she could have avoided it; that she was watching the colt and the mare at the same time, and did not realize but what she was in the road, and that she was trying to watch the mare and the road and the colt at the same time.

"Q. Do you remember whether or not you were looking back at the colt? A. It was not back; it was before me going towards some horses that were there, and I thought the colt was going to them, and I thought that it would get hurt, and I called the colt several times; was trying to watch the mare at the same time; that at the time of the accident I was going from the north crossing down toward the south crossing—down toward the old orchard, and at the time of the accident was just a little south of the depot—out from the depot on the right of way line; that while I was driving south just immediately before the accident, the colt was going diagonally from me toward these horses, a little southwest from me, and I could not say just how far the colt was ahead of me; it was just far enough that I could readily see it and at the same time try to watch the mare. Q. How far was he out to one side of the dirt road? A. It seems like it was pretty near the crossing, but I would not be positive about it, but he had gone far enough in that direction to make me anxious. I would judge I was traveling along about 100 or 150 feet from the right of way; I would not say how near the colt was to the railroad, but it seemed to be getting further from the road than it was from the track, and was quite a ways from me, going toward the horses; that when the colt started off that way I was watching him and watching the buggy, and it kept getting further and further from me. It was not at an angle so that I had to turn my head to see it. It was further in front where I could turn my eyes from the colt to the mare by just turning my head a little. I did not see the post until I struck it; I knew the posts were there, but did not see it; that some are all over to one side, and other are close in to the track. The road was not rough at the place where I was hurt. A. You had noticed that open place over there east of the railroad, had you not? A. Well, I have been down there several times; I used the road only when I go, and what is immediately around the road or immediately in my way is what I notice most. The mare I was driving is perfectly gentle; easily stopped and guided. Q. And yet it got out of the road you were traveling on that occasion, just trotting along? A. I would not consider the way she got out as at all unruly, only she wanted to follow her colt. As I saw it she was following her colt. She was not at all wild or flighty when I fell out. No one was with me. I was sitting in the seat, it being an ordinary one-seated buggy. It was the front wheel on the right side which struck the post. I was sitting mostly on the right-hand side, but fell out on the left; just fell over sideways. I realized that I was falling, and seemed to strike the wheel with my left side. I went headforemost. The horse broke loose from the buggy. I have no idea how long I lay on the ground. It is not a fact that when the accident occurred I was looking behind me. I never told any one that I was looking behind at that time."

Mrs. Cassie Bonner testified that she saw Mrs. Masterson after she came in. She bathed her face, and said that she was hurt, being thrown out of the buggy across the wheel; that she was driving and the colt was following, and she looked back to see about the colt to see if it was coming on, and the mare ran across the stake, and threw her out of the buggy. Several witnesses testified with reference to the distance between the road and the post in question,

placing it at various distances between 4 and 9 feet. Dr. Underwood testified that he was at the depot when Mrs. Masterson was hurt, and that she came over to the platform from the scene of the accident, and he heard her talking to several parties at the depot, and that she said in her conversation that she was looking back at the colt or something when she ran into the post. The testimony is voluminous and conflicting in some minor details, but the foregoing is sufficient for the purposes of this opinion.

The second issue submitted to the jury is as follows:

"Was the placing or maintaining of said post or T-rail at the point the proof shows that same was placed, under all the facts and circumstances in evidence, negligence on the part of either defendant, as the term 'negligence' has hereinbefore been defined? Unless you find from all the facts and circumstances that one of the defendants was guilty of negligence under issue No. 2, you need not answer any of the following issues."

The jury answered this as follows:

"Defendant was guilty of negligence as described in issue No. 2."

Issue No. 4 is as follows:

"Was the plaintiff, at the time of her injury, if any, guilty of contributory negligence, as that term has been defined here? If you should find that plaintiff was guilty of contributory negligence at the time of her said negligence, if any, then you will not answer any of the following issues."

The jury answered issue No. 4 as follows:

"We find that plaintiff was guilty of contributory negligence as described in issue No. 4, and therefore find that the defendant is not guilty for damages."

Based upon these findings, the court entered a judgment for the defendants.

The only assignment of error presented is that the verdict of the jury, finding that plaintiff Mrs. Masterson was guilty of contributory negligence, is contrary to the evidence, and not supported by the evidence. This assignment presents only a question of fact. The issues were submitted to the jury by a fair charge, of which appellant makes no complaint. There were several different ways in which appellant could have reached the Cagle home. She selected the dim road, running parallel with the railroad track, and the evidence of her negligence in driving along that road is sufficient to sustain the finding of the jury against her.

The case seems to have been thoroughly developed by the evidence from a great number of witnesses, and we believe the verdict and judgment should stand. Under the recent case of Marshal & East Texas Ry. Co. v. Petty (Sup.) 180 S. W. 105, we think if a judgment had been rendered for appellant it should have been set aside by the trial court. There is no question but what appellant could have seen the posts if she had been using a reasonable amount of care. The post which caused the accident was not nearer than four feet to the road along which she was driving. That the mare left the road without her knowledge is evidence of the fact that her attention was directed toward the colt. In undertaking to drive under such conditions we think she was guilty, as found by the jury. St. L. & S. W. Ry. Co. v. Samuels, 103 Tex. 54, 123 S. W. 121; Adams v. G. H. & S. A. Ry. Co., 164 S. W. 853; T. & N. O. Railway Co. v. McLeod, 62 Tex. Civ. App. 270, 131 S. W. 311; T. & N. O. R. Co. v. Brouillette, 59 Tex. Civ. App. 337, 126 S. W. 287.

The judgment is affirmed.