## CITY OF AUSTIN v. SCHLEGEL.
### (No. 6274.)

(Court of Civil Appeals of Texas. Austin. Jan. 19, 1921. Rehearing Denied March 9, 1921.)

1. **Municipal corporations** &#9758;816(6)—**Petition held not to show contributory negligence of driver when wheel struck hole in street.**

In an action against a city for injuries caused by a defect in the streets, a petition alleging that the driver of a fire wagon slackened speed to let plaintiff mount, and that plaintiff was then or shortly thereafter thrown under the wheels of the wagon by the jar when one wheel went into a hole in the street negligently left by the city, is not demurrable as alleging negligence by the driver of the fire wagon as the sole or concurrent cause of plaintiff's injury.

2. **Municipal corporations** &#9758;816(6)—**Petition held to show plaintiff was entitled to ride on fire wagon.**

In a petition for injuries to a man thrown from a fire wagon by a defect in the street, an allegation that plaintiff was lawfully entitled to be on the wagon, or to attempt to get there, at the time of the accident, is sufficient, as against a general demurrer, as an allegation that plaintiff had a right to ride on the fire wagon.

3. **Municipal corporations** &#9758;801(1) — **Man picked up by fire wagon is invitee.**

Where the driver of a fire wagon slowed up in response to plaintiff's signal to permit plaintiff to mount the wagon, he thereby invited plaintiff to ride on the wagon, and the city owed plaintiff, as such invitee, the same duty with respect to the care of its streets as it did to the other occupants of the wagon.

4. **Municipal corporations** &#9758;801(1) — **Liable for defective streets to invitee on fire wagon.**

In a suit for injuries to one riding on the fire wagon, based, not on the theory that the city furnished plaintiff an improper place to ride or that its employé, the driver, was negligent, but upon the city's negligence in repairing

its streets, a defect in which caused plaintiff to be thrown from the wagon, it was immaterial how or why plaintiff was riding on the wagon, unless it was contributory negligence for him to do so.

**5. Municipal corporations ⬦⟹764(2)—Duty not restricted to travelers on streets by ordinary vehicles.**

A city's duty to keep its streets in reasonably safe condition is not limited to the protection of travelers in the ordinary mode of traveling, but extends to one traveling in an unusual or infrequent mode, if he is not thereby guilty of contributory negligence.

Appeal from District Court, Travis County; Ireland Graves, Judge.

Suit by Max B. Schlegel against the City of Austin. Judgment for plaintiff, and defendant appeals. Affirmed.

J. Bouldin Rector, City Atty., of Austin, for appellant.

George Mendell, Jr., and O. Dickens, both of Austin, for appellee.

KEY, C. J. Appellee sued appellant for damages on account of personal injuries to him, alleged to have been caused by the negligence of appellant in permitting a hole in one of its streets to remain open. The case was submitted to a jury upon special issues, and the result of the trial was a judgment for appellee for $15,000, to reverse which this appeal is prosecuted.

As appellant's learned counsel has stressed the contention that the plaintiff's petition failed to state a cause of action, we here copy the material averments of that document:

"(2) That on the 21st day of June, A. D. 1915, defendant was, and for a long time prior thereto had been, a city of over 10,000 inhabitants; that at said time and for many years prior to that date, and at all times since then, it was and is the duty of the defendant, under the laws and Constitution of this state, and by virtue of the ordinances, control, regulation, and supervision of and over all streets, alleys, highways, bridges, and culverts, or drain pipes, within the corporate limits of said city, to construct, grade, supervise, maintain, keep in repair, and care for said streets, alleys, highways, bridges, and culverts, or drain pipes, and keep and maintain them in a reasonably safe condition for their use by travelers in vehicles, or on foot, and to so keep and maintain said streets, bridges, and culverts, or drain pipes, in such condition as not to endanger the lives, limbs, or safety of persons passing or traveling over said streets, bridges, and culverts, or drain pipes, or being transported thereover in vehicles of any character, including, among others, fire hose wagons drawn by horses; that it was and is the duty of defendant to keep and maintain said streets, bridges, and culverts, or drain pipes, in a reasonably safe state of repair; and when such streets, bridges, and culverts, or drain pipes, become unsafe and dangerous for use of travel, it be-

came and was the duty of defendant to repair same, or to keep thereon such lights, warnings, or danger signals as were necessary to notify all persons passing or traveling over said streets, bridges, and culverts, or drain pipes, or being transported thereover in vehicles of any kind, including, among others, fire hose wagons drawn by horses, of the unsafe condition of such street, bridge, culvert, or drain pipe.

"(3) That on the 21st day of June, A. D. 1915, both East Twelfth street and Navasota street were regularly designated streets and public highways in the city of Austin; that East Twelfth street extended east and west from Congress avenue to the eastern line of the city limits; that Navasota street extended north from East First street to East Nineteenth street, both being streets and highways for travel and traffic in said city of Austin, the defendant herein, and both having long prior to that time been dedicated and accepted by said city as regularly established public streets, and both having been for a long time used and traveled as such and recognized as such by defendant.

"(4) That a few years prior to the date above alleged the defendants, its officers, servants, and employés put in and installed culverts, or drain pipes, about 12 inches in diameter on the north and south sides of East Twelfth street, where Navasota crosses same; that said culverts, or drain pipes, were for the purpose of carrying off surface water, and when originally put in were about 10 or 12 inches below the surface of Navasota street; that the continuous traffic on Navasota street, together with the action of rains falling from time to time, wore the dirt away from the drain pipe, or culvert, on the south side of Twelfth street, where Navasota crosses same, and on the east side of said Navasota street; that a portion of said culvert, or drain pipe, had caved in and was broken, causing a hole about 12 inches deep and about 16 inches in diameter, a few feet from the southeast corner of the sidewalk at the junction of Navasota and Twelfth streets; that said hole had been in said drain pipe, or culvert, at said place for several weeks prior to June 21, A. D. 1915; that the defendant, though it had actual and constructive notice of the defective and dangerous condition of said broken drain pipe or culvert, failed to repair said broken drain pipe, or culvert, so as to assure the safety of persons passing or traveling over same, or being transported thereover in vehicles of any kind, including fire hose wagons drawn by horses, and had failed to place and keep any light, warning, or danger signal at or near such hole; that such failure constituted and was gross negligence, carelessness, and dereliction of duty on the part of defendant, its officers, servants, and employés to the public at large, and to this plaintiff, to whom thereby defendant has become liable for the injuries inflicted upon him, as hereinafter described.

"(5) That on the night of June 21, 1915, plaintiff being at his home on Twelfth street, just east of Navasota street, heard the fire bells ring, sounding an alarm of fire; that soon after hearing the fire bells he heard the East

Austin fire horse wagon, drawn by horses, coming north on Navasto street, and, desiring to be taken to the place of the fire and assist in its extinguishment, he ran to the junction of Twelfth and Navasota streets to get on the hose wagon and to proceed, after getting on the wagon, to the place of the fire and assist in its extinguishment; that the movements of the horses drawing said fire hose wagon were directed, controlled, and managed by a driver; that as said fire hose wagon approached plaintiff, who was standing at or near the junction of Navasota and Twelfth streets, the driver, upon being signaled by plaintiff to stop or slacken the speed of the horses and fire hose wagon to enable plaintiff to get on said fire hose wagon and to be borne thereon to the place of the fire, did, in obedience to said signal, stop or slacken the speed of said horses and fire hose wagon, and did permit plaintiff to get on said fire hose wagon to be borne thereon to the place of the fire; that when the speed of said horses and fire hose wagon was so stopped or slackened plaintiff got safely on said fire hose wagon, which proceeded then on its way to the place of the fire; that, having gotten on said fire hose wagon, plaintiff stood on the left-side running board, between the two side wheels, and held to the iron railing along the top of the wagon bed; that as soon as plaintiff got onto the wagon the speed of said horses and wagon was increased, and soon thereafter one of the wheels went down into the culvert or drain pipe hole, as heretofore described; that the sudden jerk and jar caused by the wheel going into said hole threw plaintiff's feet off and away from the running board of said hose wagon, on which he was standing, causing his chin to strike heavily against the iron railing that he was holding onto; that his chin struck said iron railing with such force as to cut a deep and severe gash in the lower part of his chin, causing blood to flow freely therefrom; that he used every effort in his power to regain his place on the side running board of said hose wagon, holding onto the railing with all his strength; that he saw that he was unable to get back onto the running board, and after going about 100 feet from the place where the wheel of the hose wagon went down into the culvert or drain pipe hole in the street, with the running horses and the constant sounding of the rotary gong on the hose wagon making a loud noise, plaintiff tried to throw his body away from the wagon as he could not hold on any longer; that in doing so he fell to the ground, the hind wheel of the hose wagon passing over his left leg and foot, cutting a deep gash in his right foot; that the lower part of his left leg and foot was completely crushed and broken to such an extent that the attending physicians were forced to amputate it just below the knee, within a few hours after the accident occurred, in order to save his life; that his right foot received a long deep cut nearly the whole length of the inside of it; that he received several cuts on his body, which was also severely and painfully bruised; that several stitches were necessary to close up and heal the gash and wound under his chin, all of which has caused this plaintiff to suffer excruciating pain and severe mental anguish; that

for nearly four weeks after this accident occurred plaintiff was confined to a bed in the city hospital, during all of which time he suffered great physical pain and mental anguish; that for nearly three weeks he was unable to change his position on his bed, but was forced to rest in a certain way; that the slightest movement of his body caused him to suffer intense pain; that prior to said accident plaintiff was a strong healthy man, and had never suffered physical pain, but that ever since receiving said injuries, and as a result thereof, he has been suffering with pain and anguish, and will continue to suffer pain and anguish so long as he lives; that if plaintiff is mistaken in stating above that he had gotten on said fire hose wagon and was standing on the running board thereof before one of the wheels went down into said hole in said culvert or drain pipe, then he alleges that, as he was attempting to get on said wagon, after the speed of the horses and wagon had been stopped or slackened as aforesaid, he was unable, by the running of said wheel into said hole, upon the quickening of the speed of the horses and wagon, and the jerk and jar produced by said wheel's running into said hole, to attain a firm footing on the running board of said wagon and his foot slipped, though he had caught hold of the iron railing on said wagon and he was left hanging by holding on to said railing; that he held on to said railing as long as he could, and, being unable to hold on longer, after said wagon had gone about 100 feet from the place where the wheel went down into the hole, he tried to throw his body away from the wagon; that in trying to do so he fell to the ground, in consequence of which he sustained the injuries above stated as the result of so falling; and that, if he did not secure a firm footing and was merely able to catch hold of the iron railing, the gash in his chin, above mentioned, was inflicted when he caught hold of said railing or when he was left hanging thereto, as aforesaid.

"(6) That prior to the injuries sustained by plaintiff, as aforesaid, he was in sound and perfect health in limb and body; that for the past 14 years he has worked at the carpenter's trade, and has always had employment; that during the past two years he has earned at his trade about $100 for each and every month; that his services in following his trade are reasonably worth that sum to him and his family per month; that in consequence of said injuries, including the loss of the lower portion of his leg, plaintiff has been totally disabled in working at his trade for the past three months, and has lost much time during which he could perform no labor; that, further, by reason of said injuries, including the loss of the lower portion of his leg, plaintiff's capacity to work and earn money has been materially and permanently diminished; that he will suffer from said injuries mentally and physically and will sustain financial loss so long as he lives, for which defendant is liable.

"(7) That plaintiff, in being on said fire hose wagon or in attempting to get thereon, was lawfully entitled to have occupied such relation, in being on said fire hose wagon, or in attempting to get thereon, at the time of the accident, to the city of Austin, that said city owed to him the duty of a person of ordinary

prudence under the circumstances to have the street at the place of the accident in reasonably safe condition to prevent said accident and injury to plaintiff; but that, instead of fulfilling that duty, said city, its officers, agents, and servants, were negligent and careless in failing to repair the broken drain pipe, or culvert, near the southeast corner of Twelfth and Navasota streets, as hereinbefore alleged, and in failing to place any light, warning, or danger signal at or near said hole, to apprise persons passing or traveling over said streets, culverts, or drain pipe, or being transported thereover in vehicles of any kind, including, among others, fire hose wagons drawn by horses, and especially this plaintiff, of the defective and dangerous condition in said street; that all of said injuries sustained by plaintiff, and all of his said pain and mental and physical suffering and loss of time and diminished capacity to labor and earn money, were and are directly and proximately caused by the aforesaid negligence of said city, its officers, agents, and servants; and that plaintiff had no knowledge or notice at the time he got on said fire hose wagon, or at any time before said wagon ran into the culvert or drain pipe hole, of the existence of the same."

### Opinion.

The first assignment in appellant's brief complains of the action of the trial court in overruling a general demurrer to the plaintiff's petition, and under that assignment it is strenuously insisted by appellant's counsel that the petition states no cause of action, and therefore the general demurrer should have been sustained for the following reasons:

(1) Because the allegations of the petition conclusively show the negligence of the driver of the fire hose wagon to be the proximate cause of appellee's injury, and appellant is not liable for such negligence of the driver.

(2) That the petition has so interwoven and associated the allegations concerning the hole in the street with those concerning the conduct of the driver of the wagon, and the action of the horses immediately before and at the time of the injury to appellee, that it cannot be determined whether the hole in the street or the driving of the hose wagon contributed most to the injury, or whether without the occurrence of both the injury would have occurred; and since appellant is not liable for the conduct of the driver, the general demurrer should have been sustained.

(3) The petition does not allege that appellee was required, expected, or had any right to get on or ride on the fire hose wagon, and, in the absence of such allegation, the facts alleged show him to have been a trespasser, or, at best, only a licensee, and therefore the demurrer should have been sustained.

(4) That appellant is only required to use ordinary care to keep the streets in reasonably safe condition for the protection of travelers in the ordinary mode of traveling, and since the petition shows that appellee was attempting to ride upon the fire hose wagon while going to a fire, he was not employing the ordinary mode of traveling, and therefore the general demurrer should have been sustained.

In a well-prepared brief, counsel for appellant has presented, with considerable force and some plausibility, these objections to appellee's petition. After due consideration, we have reached the conclusion that the objections referred to are not tenable, and that the trial court ruled correctly in not sustaining the general demurrer to the petition.

[1] As to the first question, we hold that the petition does not allege that the driver of the fire hose wagon was guilty of any negligence, nor does it show that his conduct was the proximate cause of appellee's injury.

What has just been said in reference to the first point has application to the second. The petition does not allege that the driver of the wagon was guilty of any negligence, or committed any wrong, but merely refers to those facts as explanatory of the circumstances under which appellee was injured. Of course, if he was guilty of negligence, himself, in attempting to ride upon the hose wagon, under the circumstances referred to in the petition, he was not entitled to recover; but his petition does not show, on its face, that he was guilty of such negligence. That question was made an issue by the defendant's answer, was submitted to the jury, and decided in appellee's favor.

[2, 3] Concerning the third objection to the petition, it might be sufficient to call attention to the averment that the petition alleged that at the time in question, in being on said fire hose wagon or attempting to get thereon, the plaintiff "was lawfully entitled to have occupied such relation, in being on said fire hose wagon, or in attempting to get thereon, at the time of the accident, to the city of Austin, that said city owed to him the duty of a person of ordinary prudence under the circumstances to have the street at the place of the accident in reasonably safe condition," etc. It may be conceded that the language quoted is awkwardly expressed and very general in its terms, but we think it was sufficient as against a general demurrer as an allegation that the plaintiff had the right to ride on the fire hose wagon. However, we do not rest our decision on this point upon that theory alone, but upon the theory that, aside from the averment just quoted, the petition showed that the plaintiff, in so far as the defendant, the city of Austin, was concerned, was as much entitled to ride upon the wagon as were the other occupants of that vehicle.

When the driver, in compliance with the

plaintiff's signal, stopped and permitted the latter to get on the wagon, his right to remain there and go to the fire was the same as it would have been if, without solicitation upon his part, the driver had stopped and invited him to ride on the wagon; such being the case, the plaintiff was neither a trespasser nor a licensee, but was, in substance, an invitee, and, this being his relation to the man who was in control of the wagon, the city owed the same duty to him that it did to the driver and the other occupants of the wagon.

[4] Cases against railroads, in which it has been said that a trespasser or a mere licensee must take things as he finds them, are not analogous. The plaintiff is not suing the city upon the theory that it furnished him an improper place to ride on the wagon, or that its employé, the driver, was guilty of negligence which caused the plaintiff to be injured. His petition did not allege that the wagon belonged to the city, or that the driver thereof was an employé of the city; nor did it charge that the plaintiff was furnished with an improper place to ride, or that the driver was guilty of any negligence. The petition predicates the right of recovery upon the well-established rule of law in this state to the effect that it is the duty of a municipal corporation to exercise reasonable care and diligence for the purpose of maintaining its streets in a reasonably suitable and safe condition for use by the public, and that in this instance the defendant failed to perform that duty by permitting a hole to remain in one of its public streets, as a result of which failure the plaintiff was injured. Such being the nature and character of the plaintiff's suit, it was immaterial how or why the plaintiff was riding on the wagon, unless he was guilty of contributory negligence in so doing.

[5] As to appellant's fourth and last objection to the petition, we are unable to indorse the proposition that it was only required to use ordinary care to keep its streets in reasonably safe condition for the protection of travelers in the ordinary mode of traveling. On the contrary, though the mode of traveling may be unusual or infrequent, nevertheless, if the person so traveling is not guilty of contributory negligence, the city owes him the same duty that it owes to those who travel in the usual and ordinary manner.

Several other assignments are presented in appellant's brief, all of which have been considered and are overruled, some of them assail certain findings of the jury; but we hold that the findings referred to and all others are sustained by testimony.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.