Giovanni Zolezzi, Respondent, Appellant, *v.* Harry MacCanlis, Doing Business under the Firm Name and Style of H. MacCanlis & Company, Appellant, Impleaded with Kroll & Horowitz Furniture Company, Inc., and Another, Respondents.

Second Department, October 17, 1924.

Nuisance — action against tenant and owner of building to recover for injuries suffered by plaintiff when sign suspended on side of building fell and struck plaintiff — sign was placed on building by tenant of one floor prior to lease of entire building — tenant of entire building sublet said floor to same tenant — evidence shows that condition of sign and its fastenings was such at time of execution of lease of entire building and sublease of said floor as to make sign nuisance — both owner and tenant of entire building are liable.

Where the owner of premises knows, or by the exercise of reasonable care can ascertain, that the premises have upon them a nuisance dangerous to the public, it is his duty to abate it before leasing the property, and, if he leases the prop-

erty without doing this, he is liable to respond in damages to any one injured in consequence of the nuisance, though he did not create it.

Accordingly, both the owner of a building and a tenant of the entire building may be held liable to a pedestrian for injuries suffered when a sign attached to the outside of the building fell and struck the pedestrian, and it is error to dismiss the complaint at the close of the plaintiff's case, where it appears that the sign was placed on the building by the tenant of one floor thereof prior to the execution of the lease of the entire building; that after the lease of the entire building said floor was sublet to the tenant who occupied it at the time the sign was erected; that at the time the entire building was leased and at the time the sublease was made, the condition of the sign and its fastenings was such as to permit a finding that the sign constituted a nuisance; and that both the owner and the tenant of the entire building knew, or by the exercise of reasonable care could have ascertained, the dangerous condition of the sign at the time the respective leases were made.

KELLY, P. J., and KELBY, J., dissent in part.

APPEAL by the defendant, Harry MacCanlis, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 2d day of July, 1923, upon the verdict of a jury for $25,000, and also from an order entered in said clerk's office on the 7th day of July, 1923, as resettled by an order entered in said clerk's office on the 14th day of July, 1923, denying the defendant's motion for a new trial made upon the minutes.

Appeal by the plaintiff, Giovanni Zolezzi, from a judgment of the Supreme Court in favor of the defendant Kroll & Horowitz Furniture Company, Inc., entered in the office of the clerk of the county of Kings on the 7th day of September, 1923, upon the dismissal of the complaint as to said defendant at the close of the plaintiff's case, and also from a judgment in favor of the defendant Ruth A. Bruce Brown, entered in said clerk's office on the 18th day of September, 1923, upon the dismissal of the complaint as to said defendant at the close of the plaintiff's case.

*Herbert N. Warbasse* [*George W. Matheson* with him on the brief], for the plaintiff.

No appearance for the appellant Harry MacCanlis.

*Charles K. Allen* [*Clayton J. Heermance* with him on the brief] for the respondent Kroll & Horowitz Furniture Company, Inc.

*Edward P. Mowton,* for the respondent Ruth A. Bruce Brown.

KAPPER, J.:

In the afternoon of October 26, 1922, a wooden sign weighing 200 pounds fell from the building at the corner of Canal and

24

Lafayette streets in the city of New York, striking plaintiff, a pedestrian, and inflicting serious injuries upon him. The sign, which was of a height of ten feet and a width of five feet, hung on a slant at the corner edge of the building opposite the fourth loft so that it faced to some extent both streets, its outer edges having returns to the building walls consisting of two wooden wings each two feet wide and the same height as the sign itself. The locality is one of the busiest in the city and thousands of people pass over the sidewalks hourly. The sign was owned and erected in the early part of the year 1917 by the defendant MacCanlis who was the tenant of said loft under a five-year lease dated October 31, 1916, made to him by the defendant Ruth A. Bruce Brown, the then and present owner of the premises. At the time of such renting the defendant Kroll & Horowitz Furniture Company, Inc., was also a tenant of said owner and in occupancy of the lower portion of said building  On December 19, 1921, said owner leased the entire building to said furniture company for a term of ten years and one month commencing January 1, 1922, said furniture company taking such lease subject to the existing lease of the defendant MacCanlis. On December 27, 1921, the furniture company, as lessee of the entire building, sublet the loft occupied by MacCanlis to the latter for a period of one year commencing at the expiration of his then existing lease, namely, February 1, 1922. In this last-mentioned lease it was provided that MacCanlis would not place signs on the outside of the building " unless the style, size and location of said sign shall have been first approved by the lessor." A like provision was contained in two separate leases made by the owner to said furniture company which preceded the lease of the whole premises of December 19, 1921, but no such provision was contained in the last-mentioned lease, nor in the lease made to MacCanlis by the owner on October 31, 1916. The sign as erected by MacCanlis was on the outer walls of the loft of the building of which he was the lessee and remained where he placed it until it fell.

There was testimony which would have permitted a jury to say that the sign was improperly hung in the first instance without securely placed hooks or supports, and that other attachments intended to secure it to the building and keep the sign from falling, consisting of galvanized wire, had become corroded and rotten at least two or more years before the sign fell. It was also testified that express permission was given to MacCanlis to place the sign on the outer corner of his loft by the superintendent of the building employed by the owner, and that without such permission the sign could not have been erected; and that this superintendent

was in and about the building during all the years of MacCanlis' tenancy.

At the close of the testimony the complaint was dismissed as to the owner and the furniture company, the general lessee, and the case was submitted to the jury as against the tenant MacCanlis, against whom a verdict was rendered, from the judgment entered upon which MacCanlis appealed, but as he has not appeared on the argument and no question is raised on his behalf as to the propriety of the judgment against him the same should, therefore, be affirmed, with costs.

The plaintiff now appeals from the judgments of dismissal rendered in favor of the defendants, the owner and the general lessee, and contends that a question of fact was presented whether both or either participated with MacCanlis in the continuance and maintenance of a nuisance.

The nonsuit of which the plaintiff complains seems to have been predicated upon the theory that MacCanlis' lease of the fourth loft of the building carried with it the right to the exclusive possession of the outer walls of said building fronting on such fourth loft, and that MacCanlis alone could determine the use of such outer walls for advertising purposes freed from any interference or control on the part of his lessors. At least, this seems to have been the conclusion arrived at in so far as concerned the owner's liability because the owner incorporated no restriction in her lease to MacCanlis. The precise ground of the dismissal in favor of the general lessee, the furniture company, is not so clearly set forth. As already stated, we have evidence permitting a finding that the owner's agent, the superintendent of the building, consented to the erection of the sign without which consent the sign could not have been put up. As to the furniture company, the general lessee and the last lessor of MacCanlis, that latter lease, made several months before the accident, did reserve a control over the placement of signs on the outer walls of the building. It may be that, as between landlord and tenant, in the absence of a restriction in the lease, the tenant would have the sole right to display signs advertising his business on the outer walls of that portion of the premises rented to him. (*Stahl & Jaeger* v. *Satenstein*, 233 N. Y. 196; *Baldwin* v. *Morgan*, 43 Hun, 355.) A controversy, however, between landlord and tenant involving the right to display advertising signs on a demised building, is quite unrelated to the proposition of the security of the public. Therefore, when a sign hanging over a public street becomes a menace to safe pedestrianism, the law has no concern with the question of whether or not the tenant or his landlord has the right to the use for sign

displays of the outer wall of that portion of the premises which is leased. There then comes into operation the rules of law relating to nuisance and negligence arising from a general duty owing to the public; and, even were we to assume that as to the owner of the property there had been no consent to the erection of a sign, this would not necessarily leave the wayfarer remediless as against such owner where a sign erected by the tenant fell because of improper erection or decayed fastenings, and from which conditions a jury could find that a nuisance had been suffered to exist. Whether or not a landlord can enter to bring about the removal of a nuisance created by his tenant, where he has not in the lease restricted the use to which the tenant put the premises, need not be here decided. Nor is it necessary to criticize the owner for not reserving the power to abate such a nuisance. Because, in this case, the evidence would have justified the jury in holding that long prior to the owner's lease to the furniture company of the entire premises, the sign in question was in imminent danger of falling and constituted a nuisance. It is equally clear that a like finding could be made against the furniture company, which sublet to MacCanlis the same loft at a time some eight months before the accident happened. Both, therefore, may be said to have participated in the continuance of the nuisance. " Each one of several persons who continue a nuisance is responsible for it, and he may, as in all cases of wrong, be sued alone or with the other wrong-doers." (*Irvine* v. *Wood*, 51 N. Y. 224, 230.) In *McNulty* v. *Ludwig & Co.* (153 App. Div. 206) we held that a sign so placed and adjusted that it is liable to fall into the street and injure a person properly and lawfully traveling thereon constitutes a nuisance. And in *San Filippo* v. *American Bill Posting Co.* (112 App. Div. 395, 396) it was said of a sign that had fallen, that " if not so maintained that it could not fall " such a sign was " imminently dangerous."

We are all agreed that the liability of the respondent furniture company presented a question of fact. As to the liability of the respondent owner we are divided, but it seems to me the principle applicable to her is well settled, namely, that where the owner of premises knows, or by the exercise of reasonable care can ascertain, that they have upon them a nuisance, dangerous to the public, it is his duty to abate it before leasing the property, and if he leases without doing this he is liable to respond in damages to any one injured in consequence of the nuisance, though he did not create it. (*Timlin* v. *Standard Oil Co.*, 126 N. Y. 514. See, also, *Matthews* v. *De Groff*, 13 App. Div. 356, 361; *Hungerford* v. *Bent*, 55 Hun, 3, 6.) The *Timlin* case further held that the same liability rests

upon a tenant who sublets the premises, knowing or being chargeable with knowledge of the existence of the nuisance.

The owner urges that she was not in possession of MacCanlis' loft when she leased the entire building to the furniture company. But, as I view it, her liability does not rest upon possession but upon the fact of leasing with an existing nuisance. The owner of premises who leases them when they are already a nuisance is liable for damage to a stranger happening therefrom whether the owner be in possession or not. (*Swords* v. *Edgar*, 59 N. Y. 28, 34.) Liability for a nuisance fraught with appalling consequences to the pedestrian public unless abated, ought not to vanish because the property owner leases the whole premises prior to the expiration of an outstanding lease on the portion thereof on which the nuisance exists. It was within the power of the owner to refrain from leasing until an inspection of the sign could be made. Parting with control of the entire building a few weeks before MacCanlis' lease expired should not in the circumstances give her the right to say that she had washed her hands of all blame.

The judgments of dismissal as to the defendant Ruth A. Bruce Brown and the Kroll & Horowitz Furniture Company, Inc., should be reversed upon the law, and a new trial granted, with costs to plaintiff, appellant, to abide the event; and the judgment and order in favor of plaintiff against the defendant MacCanlis should be affirmed, with costs.

RICH and YOUNG, JJ., concur; KELLY, P. J., and KELBY, J., dissent from the reversal as to the defendant Ruth A. Bruce Brown, upon the ground that at the time of the creation of the nuisance, or thereafter, the said defendant was not in possession of the premises, and there is no evidence that she had knowledge of the existence of the alleged nuisance.

Judgment and order as against the defendant MacCanlis unanimously affirmed, with costs. Judgments as to the defendants Kroll & Horowitz Furniture Company and Ruth A. Bruce Brown reversed upon the law, and a new trial granted, with costs to plaintiff, appellant, to abide the event.