**SITAS v. CITY OF SAN ANGELO et al.**

No. 9412.

Court of Civil Appeals of Texas. Austin.
Dec. 31, 1943.

Rehearing Overruled Jan. 19, 1944.

Sedberry & Williams and I. J. Curtsinger, all of San Angelo, for appellant.

Collins, Jackson, Snodgrass & Blanks, of San Angelo, for appellee City of San Angelo.

Pinkney Grissom (of Thompson, Knight, Harris, Wright & Weisberg), of Dallas, and Upton, Upton & Baker, of San Angelo, for other appellees.

BLAIR, Justice.

Appellant, Arthur Sitas, sued appellees, the City of San Angelo, a municipal corporation operating under a home rule charter; R. L. Henderson, individually and as the executor of the estate of Martha E. Henderson, deceased, the owner of the St. Angelus Hotel property in the City of San Angelo; C. C. McBurnett, the lessee of the hotel property; and J. M. Joiner, sub-lessee of C. C. McBurnett of a part of the hotel property in which he operated a barber shop, to recover damages for personal injuries occasioned by colliding, at night, with an unlighted barber sign attached to the wall of the hotel building and projecting over a portion of the public sidewalk in front of the barber shop. Joiner died before the trial, and appellant dismissed as to him. At the conclusion of the evidence the trial court withdrew the case from the jury and rendered judgment for the remaining appellees; hence this appeal, except no appeal was taken from the judgment in favor of R. L. Henderson in his individual capacity, because no part of the Henderson estate had been partitioned or paid to him individually.

Two grounds of recovery were alleged by appellant, as follows:

1. That the barber sign as attached to the wall of the hotel building and projecting over the public sidewalk was a dangerous nuisance and was unlawfully erected and maintained, and of which appellees had notice.

2. That appellees (other than the City of San Angelo) were negligent in permitting the barber sign to be so erected or maintained after notice thereof; and were further negligent in failing to provide any illumination or light to render the sign visible at night, and particularly on the occasion in question, which was in the nighttime and when it was raining at the time appellant collided with the barber sign. And that appellee City of San Angelo was negligent in permitting the barber sign to be so erected or maintained; in failing to remove or require its removal after notice of its existence; and in failing to provide or require that the sign be lighted, particularly in the nighttime.

Each appellee answered by a general denial. Appellees other than the City of San Angelo answered that the barber shop portion of the hotel building was rented to Joiner who had exclusive control over it, and that he owned, erected and maintained the sign without their knowledge, or notice to them. Appellee City of San Angelo also alleged that the sign was erected and maintained without its knowledge, or notice to it. All appellees set up as special defense an ordinance passed on April 4, 1912, alleging that the sign was erected and maintained in substantial compliance therewith, and was a reasonable and customary use of the sidewalk.

The material portions of the ordinance read:

"1. It shall hereafter be unlawful for any person, persons, firm or corporation to place, erect or maintain any swinging sign, sign-board, sign-post, banner or other advertisement over, along or upon any street or sidewalk in the City of San Angelo, which shall project beyond the property line of the adjoining premises for more than twelve inches.

"2. All swinging signs, sign-boards, sign-posts, banners or other advertisements now placed, kept or maintained over, along or upon any street or sidewalk in the City of San Angelo, contrary to the provisions of the foregoing section of this ordinance, are hereby declared to be nuisances, and shall be removed therefrom by the owners thereof within fifteen days from the time this ordinance shall take effect.

"3. It shall not be held to include electric signs not over twelve inches in diameter, provided that such electric signs shall be securely fastened to the awning or building and at least seven feet from the sidewalk grade."

A fine of not less than five nor more than two hundred dollars is provided for any violation of the ordinance.

The portion of the St. Angelus Hotel building occupied by the barber shop faced south on Beauregard Avenue, one of the principal streets of the City of San Angelo. The barber sign with which appellant collided is firmly attached by bolts to the wall of the hotel building and from this point projects over the sidewalk approximately 12⅞ inches, with the bottom part of the sign about 4 feet above the surface of the sidewalk, and extending upward 3 feet and 7 inches, the length of the sign. At the base of the wall is a marble slab about 2 feet high and about 1½ inches thick, and, measured from a point in a perpendicular line to the bottom and outer edge of the sign, it projects over the sidewalk about 11½ inches. The proof did not definitely show whether the wall of the hotel building to which the sign was attached was actually on the property line, or whether the outside edge of the marble slab at the base of the wall was actually the property line. The building did not rest on the marble slab, and it was rather for ornamental purposes. It was a part of the building. The frame of the sign is metal and is triangular in shape, its east and west sides joining in an apex at the farthest point of projection over the sidewalk, and its sides are of glass. The sign is an electrically lighted, red striped sign, such as is commonly used to advertise a barber shop and its location in a building. Joiner had the sign erected and had maintained it at the same place since its erection in the year 1927. The accident in question occurred May 23, 1940, between 10 and 11 o'clock at night, during a heavy downpour of rain, and the electric sign was not illuminated or lighted at the time appellant collided with it. While proceeding along the sidewalk at a rapid pace, the point of his left shoulder struck the sign near its bottom and at the outside edge of the metal frame, which caused him to be knocked or thrown to the sidewalk, breaking his hip and resulting in permanent injury to him.

In rendering judgment for appellees the trial court based its decision upon several grounds. The first was apparently upon the conclusion that under the foregoing facts the barber sign was lawfully erected and maintained and was not a dangerous nuisance, but was a reasonable or ordinary use of the sidewalk under the provisions of the ordinance. This conclusion was apparently based upon a holding that appellant failed to show exactly where the property line was located so that it might be definitely determined whether the sign projected more than 12 inches over the sidewalk from the property line. In so concluding the court necessarily construed the ordinance (1) as providing that any sign which did not extend more than 12 inches over the sidewalk from the property line was lawful, and that signs extending more than 12 inches over the sidewalk must be at least 7 feet above the surface of the sidewalk; and (2) that as so construed or interpreted the ordinance was a reasonable regulatory measure, regulating the use by individuals or businesses of signs for advertising purposes on all portions of the sidewalk within 12 inches of the property line; and that in consequence no liability attached to either of the appellees for the injuries and damages sustained by appellant when he collided with the sign. Also, in so construing the ordinance the trial court apparently held that since the City of San Angelo under its Home Rule Charter is given the "exclusive domain, control and jurisdiction in, upon, over and under public streets, avenues and highways," and "power to control, regulate and remove all obstructions, encroachments and encumbrances on any public street or alley"; and by Art. 1175 (Sec. 18) is given the

power "to control, regulate and remove all obstructions * * * on any public street, alley or ground," and (Sec. 24) "to license, regulate, control or prohibit the erection of signs or billboards as may be provided by charter or ordinance," it had the authority and power to pass the ordinance in question, which was a reasonable regulation of the use of the sidewalk, and which authorized the erection and maintenance of the sign in question.

Briefly stated, the trial court seems to have construed the entire ordinance as providing that any sign which did not project more than 12 inches over the sidewalk from the property line was lawful; but that any sign which projects more than 12 inches over the sidewalk from the property line must be at least 7 feet above the surface of the sidewalk; and that so construed the ordinance was a reasonable regulatory measure, which appellees had substantially complied with; and in consequence no liability attached to appellees for the injury sustained by appellant when he collided with the sign. This construction of the ordinance is not entirely free from doubt. Sections 1 and 2 do not provide for the height which signs must be above the sidewalk. Section 3 merely provides that "electric signs not over twelve inches in diameter * * * shall be securely fastened to the awning or building and at least seven feet from the sidewalk grade." The ordinance may with better reason be construed as providing that no sign shall project more than 12 inches along, over or upon the sidewalk, and shall be at least 7 feet above the surface of the sidewalk. A sign 7 feet above the sidewalk would not ordinarily interfere with or be dangerous to the general public using the sidewalk. We are of the view, however, that the mere facts that the sign may not have been erected or maintained in violation of the ordinance is neither controlling nor decisive of the liability of appellees in the instant case.

■ We hold that the ordinance is not a regulatory measure licensing, regulating, or controlling the use of signs, but that it is entirely penal in nature; and that whether the sign in question may have been erected or maintained so as not to be in violation of the provisions of the ordinance is neither controlling nor decisive of the liability of appellees upon the cause of action asserted by appellant. But, if the ordinance should be construed as being a regulatory measure, and if the sign in question was not erected or maintained in violation of its provisions, such facts are neither controlling nor determinative of the cause of action asserted by appellant. The ordinance merely provides that signs and billboards shall not project more than 12 inches from the property line over, along, or upon any sidewalk. It makes no provision as to the kind, or at what place the signs may be erected or maintained, but leaves such matters to the judgment or discretion of the party erecting or maintaining the signs or billboards. This discretion cannot be arbitrarily or negligently exercised either with respect to the character of the sign or with respect to its location over, along, or upon the sidewalk. In consequence one may not erect or maintain a sign or billboard at any point or place on the awning or building, which constitutes an obstruction of the sidewalk, and which would impede the use, or increase the danger of injury to the general public using the sidewalk.

■ We are of the view, however, that the undisputed facts show the sign to be a dangerous obstruction of the sidewalk, and in consequence a nuisance per se. As erected and maintained it projected $12\frac{7}{8}$ inches from the wall of the building over the sidewalk, and is slightly less than 4 feet above the surface of the sidewalk. The frame of the sign is metal, its sides glass, and it is securely fastened by bolts to the wall of the building, and is permanent in structure, and has existed where it is since its erection in the year 1927. It is an electrically illuminated, red striped barber's sign, but is seldom illuminated after 10 o'clock at night. It is on a main street of the city of San Angelo, and is attached to the wall of a large hotel building, and near the entrance to the hotel where guests come and go at all times, and the public generally use the sidewalk. Persons 4 or more feet in height are in danger of colliding with the sign, if they should travel within slightly less than $12\frac{7}{8}$ inches of the wall of the building, or within slightly less than $11\frac{1}{2}$ inches of the outside edge of the marble slab at the base of the wall to which the sign is attached, and in fact it is an appropriation of this portion of the sidewalk to private use. This danger exists both in the daytime and at night, particularly at night when the sign is not lighted or illuminated. If the sign had been 5 feet and 8 inches above

the sidewalk, appellant would not have collided with it; and if it had been 7 feet above the sidewalk, as signs projecting more than 12 inches over the sidewalk are required to be, it would not have interfered with the use of the sidewalk by the public generally.

No Texas case is cited or found which involves the erection or maintenance of a barber sign or other sign along, over or upon a public sidewalk. Cases from other jurisdictions hold, generally, that the danger and unsafety of a structure or object projecting dangerously low into a street or sidewalk, such as a sign or an electric light, "may be as great, and the consequence as injurious, as in case of defects in, or obstruction upon, the surface of the street" or sidewalk. 43 C.J. 1029 (sec. 1808) bb; 25 Am.Jur. 586, § 294; City of Shawnee v. Bennett, 116 Okl. 38, 243 P. 190, 45 A.L.R. 796, 800, 802. Note, subd. 2; Baillie v. Wallace, 24 Idaho 706, 135 P. 850. The danger and unsafety of the barber sign as erected and maintained and projecting 12⅞ inches over the sidewalk from the wall, or 11½ inches over the sidewalk from the outside of the marble slab at the base of the wall, and only about 4 feet above the surface of the sidewalk, is apparent. It obstructs and encroaches upon and interferes with the free and full use of the sidewalk by the public. It is of permanent structure and has been maintained at the same location for a long number of years. These facts constitute the sign a "nuisance per se" as that term has been uniformly defined by the courts.

In the recent case of Joseph v. City of Austin, 101 S.W.2d 381, 385, error refused, this court reviewed at length the decisions of this and other jurisdictions defining what character of obstruction of a sidewalk or street would constitute a "nuisance per se," holding "that anything placed in a street or highway of a permanent nature, like a fence, building, or wall, is an obstruction and a nuisance per se, if such obstruction renders the street less commodious for public uses"; and quoting from the case of Dozier v. City of Austin, Tex.Civ.App., 253 S.W. 554, as follows: " ' "[The] public highways belong from side to side and end to end to the public" and any permanent structure or purpresture which materially encroaches upon the public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public.' "

And quoting with approval from a decision of the Supreme Court of Illinois, People v. Harris, 203 Ill. 272, 67 N.E. 785, 96 Am.St.Rep. 304, we held, as follows: "This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all; and, if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without becoming a nuisance, there would be no certainty in the law * * *. Thus expediency forbids any other rule. But even if it did not, the rule is well founded in principle; for it is well settled that 'the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and, if this be true, it necessarily follows that there can be no rightful permanent use of the way for private purposes."

Overruling in this connection the contention of appellees that the barber sign as erected and maintained was a reasonable use of the sidewalk space in comparison with the usages of barber and other signs along, over and upon the sidewalks of the City of San Angelo, we cite our further ruling in the Joseph case, as follows: "These contentions are fully answered by the above quotation from Dozier v. City of Austin, wherein the court held that streets belong to the public from side to side and end to end; and wherein it was also held that 'no question of the reasonableness or unreasonableness of a permanent obstruction can ever arise.' "

Having held the sign in question to be an unlawful obstruction of the sidewalk and a nuisance per se, it is not justified on the ground of convenience of the public seeking a barber shop, or that it is a custom of the neighborhood to create such obstructions, or that there are other similar obstructions or signs on the same street or sidewalk or elsewhere on the public streets of the City of San Angelo. Robinson v. State, Tex.Cr.App., 44 S.W. 509; 43 C. J. 1015.

Under the holding that the sign is a dangerous obstruction of the sidewalk and a nuisance per se, the general rule that proof of negligence is not essential to imposition of liability for its erection or maintenance is applicable. "A nuisance does not rest on the degree of care used, but on the degree of danger * * * existing even with the best of care." 31 Tex.Jur. 421, § 11, and cases there cited.

However, and when as alleged by appellant's second ground of recovery, the sign may become a nuisance by reason of negligence in maintaining it in an unlighted condition in the nighttime, such negligence, or the necessary elements thereof, must be shown to establish liability on that ground of recovery. Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 52 L.R.A. 293, 86 Am.St.Rep. 835.

■ From the provisions of the ordinance it is clear that the City of San Angelo did not intend to legalize a nuisance, but intended to prohibit the erection and maintenance of signs which were declared to be nuisances. Before it can be held that the ordinance intended to legalize a permanent obstruction of the sidewalk and a nuisance, "it must appear that the statute (ordinance) either pointed out the place where the objectionable structure or works were to be built or operated, or left to the corporation or person operating same the power to make arbitrary selection." Burrows v. Texas & N. O. Ry. Co., Tex.Civ. App., 54 S.W.2d 1090, 1094, writ dismissed, wherein it is held that the law authorizing operation of dipping vats by a county does not authorize arbitrary location of them. This rule applies with greater force to the use of the public street or sidewalk, which belongs to the public, and neither the state, county, nor municipality may authorize any permanent obstruction or encroachment upon them for private uses or purposes. And "when a nuisance actually exists, it is not excused by the fact that it arises from a business which is of itself lawful, or that it is necessary to the operation of the business." Burrows case, supra. A sign placed on or over a sidewalk or street to advertise a business is primarily for private purposes. The rule that the legislature or a municipality may have the power to legalize a nuisance when it is reasonably necessary to the performance of a public service so as to prevent it from being subject to abatement is not applicable. Such rule, however, is not effective to exempt those creating or responsible for maintaining the nuisance from liability for damages occasioned by it. Rainey v. Red River, T. & S. Ry. Co., 99 Tex. 276, 89 S.W. 768, 90 S.W. 1096, 3 L.R.A.,N.S., 590, 122 Am.St.Rep. 622, 13 Ann.Cas. 580.

■ The court also erred in taking the case from the jury upon the conclusion that the barber sign was erected and maintained by Joiner without the knowledge of or notice to appellees. Appellant alleged that the City of San Angelo negligently permitted the sign to be erected or maintained in violation of law and its duty to remove or cause the same to be removed after notice of its existence. Liability of a municipality attaches or arises for failure to keep its public sidewalks in a reasonably safe condition for use by the public, even though the obstruction or unsafe condition is created or maintained by a third person, provided the municipality negligently fails to remove or cause the obstruction to be removed, or fails to cure or remedy the unsafe condition after notice of the existence of same. The sign was open and apparent, and its danger was obvious particularly to those charged with the duty of removing or causing it to be removed, or with causing it to be abated as a nuisance. It was permanent in nature, and had existed in its present location about thirteen years. Another person had collided with the sign in the daytime, but no notice of the occurrence was given to either of the appellees.

■ If these facts and circumstances do not show as a matter of law that the city did have notice of the sign, they clearly raise a jury question as to whether by the exercise of ordinary care the City of San Angelo could have discovered and removed, or caused the removal of the obstruction, or could have cured or remedied its unsafe condition by not being lighted in the nighttime. 39 Tex.Jur. 640, 663 and 709, §§ 92, 106 and 134, and cases there cited. See particularly City of Fort Worth v. Johnson, 84 Tex. 137, 19 S.W. 361; Hanks v. City of Port Arthur, 121 Tex. 202, 48 S.W.2d 944, 83 A.L.R. 278; Klein v. City of Dallas, 71 Tex. 280, 8 S.W. 90; Radford Grocery Co. v. City of Abilene, Tex.Civ.App., 20 S.W.2d 255; McCutcheon v. Wozencraft, Tex.Com.App., 255 S.W. 716, affirmed 116 Tex. 440, 294 S.W. 1105; Joseph v. City of Austin, Tex.Civ.App., 101 S.W.2d 381, error refused; City of Dallas v. Jones, 93 Tex. 38, 49 S.W. 577, 53 S.W. 377; City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52, 15 Am.St. Rep. 840; 30 Tex.Jur. 147, § 72.

No Texas case is cited or has been found dealing specifically with the liability of a city for damages to a pedestrian coming in contact with a sign overhanging or projecting over a sidewalk. In 45 A.L.R. 800, 802 note, subd. 2, several cases from other jurisdictions are annotated with respect to liability of a city as affected by notice of

dangerous conditions of signs over or along sidewalks. In the case of Baillie v. Wallace, 24 Idaho 706, 135 P. 850, 854, a sign one foot and two inches wide and five feet and 10⅞ inches above the level of the sidewalk, extended over a part of the sidewalk where people traveled, and had so remained for about a month before a pedestrian was injured by colliding with it, the court held that such facts and circumstances were sufficient to justify a jury in finding that the city had constructive notice of the existence of the sign over the sidewalk, so as to render it liable for failure to remove the nuisance; and further held: "It is not essential that the corporation should have had actual notice. * * * City officials charged with the duty of keeping the streets and sidewalks in repair must understand that, if they neglect to do so, if such neglect results in injury, the city is liable to the person injured and such city officials ought to be watchful and vigilant in the discharge of their duties in that respect, not only to keep the surface of the streets and sidewalks in proper repair, but the space above them, and signs, awnings, and other projections over the sidewalk and street should be carefully looked after by the proper officers."

The facts in the instant case are much stronger than the facts in the Baillie case as showing constructive notice to the City of San Angelo of the existence of the sign.

Even if the ordinance be construed as being a regulatory measure and as a permission to erect or maintain barber or other signs over, along or upon the sidewalks, it makes no provision as to the kind, or at exactly what place such signs may be placed, but leaves such matters to the discretion and judgment of those who erect or maintain them. In consequence, the city must still supervise the erection and maintenance of such signs under its mandatory duty of keeping its streets and sidewalks in a reasonably safe condition for use by the public, and notice, actual or constructive, that such a sign is erected or maintained so as to obstruct the public use of the sidewalk, and which is dangerous to or interferes with such use, and failure within a reasonable time after notice to remove or cause it to be removed will render the city liable for damages occasioned by one colliding with it and receiving injury. This rule is well stated in the case of Gnau v. Ackerman, 166 Ky. 258, 265, 179 S.W. 217, 221, as follows: "The duty of keeping its streets in condition for use is an absolute duty that the city cannot delegate to others and thereby excuse itself. When it grants permission to another party to place an obstruction in its streets, it must take notice of the nature and character of obstruction so placed and the manner in which it is maintained, and see to it that it does not make the street unsafe for use by the public. If this were not so, the city could, by granting permits to occupy its streets, relieve itself entirely of the duty it owes the public; and we do not know of any authority that would countenance a doctrine like this." Radford Grocery Co. v. City of Abilene, Tex. Civ.App., 20 S.W.2d 255.

The trial court also erred in taking the case from the jury upon the conclusion that the sign was erected and maintained by Joiner without the knowledge of or notice to appellees Henderson estate and C. C. McBurnett.

The Henderson estate owns the hotel building. C. C. McBurnett is lessee with complete control over the entire building, and with authority to sublet any part, but not all of it, without the consent of the owner. McBurnett subleased to Joiner the portion of the building occupied by the barber shop, and has so leased under successive lease contracts since 1919, the last being executed shortly before and was in force at the time of the accident in question. Under the present arrangement McBurnett does not lease the portion of the hotel building occupied by the barber shop, but it is controlled by the executor of the Henderson estate. Whether this arrangement was in effect at the time of the accident in question was not shown.

The St. Angelus Hotel property consists of the hotel proper of seven stories and the barber shop, a one-story structure built on the east wall of the main building. This wall is about 16 inches wide and the barber sign is attached to the south end of this wall and projects over the street 12⅞ inches, and is about 4 feet above the surface of the sidewalk. The south end of the partition wall was not under the exclusive control of Joiner, but being a partition wall was necessarily partially under the control of the owner of the building and of McBurnett, the lessee of the entire hotel property. The sign was placed on the wall by the hotel engineer, an employee of McBurnett, at the request of Joiner, the owner of the sign and operator of the

barber shop. The electricity which lighted the barber sign came through the meter of the St. Angelus Coffee Shop, operated by McBurnett, which usually closed at 10 o'clock each night, at which time the lights were cut off in the coffee shop, and in consequence the electricity which illuminated the barber sign was cut off. McBurnett testified that he knew nothing of his engineer's erecting the sign, nor of his connecting it with the coffee shop meter until after the occurrence in question. He testified that his engineer had charge of the electrical installations in the hotel building; and testified with respect to his knowledge of the sign, as follows:

"Q. You found out about it shortly after it was placed there? A. I wouldn't be surprised if I didn't.

"Q. You didn't tell him to take it down did you? A. No, there was no reason to take it down; there are signs all over town and they are perfectly legitimate."

The foregoing facts show that appellee McBurnett had actual notice of the existence of the sign since shortly after its erection in the year 1927; and in consequence no issue was left for the jury as to notice of the existence of the sign as to him. He was not excused from permitting it to remain as an obstruction of the sidewalk, because he thought that "there was no reason to take it down," and because "there are signs all over town and they are perfectly legitimate," under the rule heretofore stated with respect to that claim.

In 45 A.L.R. 800–812, and 49 A.L.R. 1418–1426, the decisions are reviewed with respect to the liability of an owner or landlord for injuries arising from such obstruction as affected by notice of such dangerous conditions, and failure to remove them after notice of their existence. At page 1425 of 49 A.L.R., the text-writer states that: "In the cases cited above to the general proposition, the courts seem to hold that, even if the landlord did not have actual knowledge of the dangerous condition of the leased premises, he should be charged with constructive knowledge, since, at the expiration of the lease, he has an opportunity to go upon the premises and examine their condition; and, if he does not do so, and leases or relets the premises without making them safe, he is at fault, and should be charged with injuries to third persons due to the dangerous condition of the leased premises."

At page 806 of 45 A.L.R., it is stated that: "A landlord having general supervision of the premises and control of a part of the outer wall covered by the sign of a tenant occupying the floor, and who renewed such tenant's lease after the erection of the sign, is liable in negligence to a traveler on the sidewalk, injured by the fall of the sign. Woodman v. Shepard (1921) 238 Mass. 196, 130 N.E. 194, 13 A. L.R. 982; Zolezzi v. MacCanlis (1924) 210 App.Div. 368, 206 N.Y.S. 330, later appeal in Zolezzi v. Kroll & H. Furniture Co. (1926) 216 App.Div. 719, 214 N.Y.S. 205. See, also, Reynolds v. Van Beuren [155 N.Y. 120, 49 N.E. 763, 42 L.R.A. 129], supra."

Similar rules as to the liability of a landlord, or as applied to a lessee in control with power to sublease, are stated in the case of Texas Co. v. Freer, Tex.Civ.App., 151 S.W.2d 907, writ dismissed.

We think the rules quoted are particularly applicable to both the Henderson estate and C. C. McBurnett, because each had executed several leases as above stated after the erection of the sign in question, and because the sign was erected on the outer wall which was partially under the control of both the owner and the lessee of the entire building, and who occupied the relationship of landlord of the tenant who erected and maintained the sign. The cause of action of appellant against these two appellees was based upon both the theory of nuisance and of negligence, it being alleged that they permitted the barber sign to be so erected and maintained as a nuisance after notice thereof, and were also negligent in so permitting it to be erected and maintained, after notice, and in failing to provide any illumination or light to render the sign visible at night, and particularly on the occasion in question, which was in the nighttime and when visibility was affected by a downpour of rain.

Unquestionably, the liability of Joiner, who owned the sign and caused it to be erected and maintained was established. But he died prior to the trial, and upon proper showing the suit was dismissed as to him or his estate. In consequence, only questions as to the liability of the owner of the building and its tenant arise. Their liability does not arise from the mere fact of ownership of the building, but upon the control of it under the lease of the entire hotel property to McBurnett, and is predicated on the wrongful act of permit-

ting the continuance of the nuisance, or of negligently permitting it to be maintained, after notice of its existence. Liability in such cases depends upon whether an ordinarily prudent person in the exercise of ordinary care would permit the obstruction to remain after notice of its existence, which notice may be either actual or constructive. Injury to a pedestrian using the sidewalk by colliding with a sign extending about 12 inches over the sidewalk and only about 4 feet above its surface, under the circumstances alleged and proved, is foreseeable, and liability for such injury will follow if there is competent proof of the essential elements of liability. 39 Tex.Jur. 661; 43 C.J. 1099 (Sec. 1864) 7. "It is not required that the particular injury * * * should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849; Reegan v. City of Galveston, Tex.Civ.App., 24 S.W.2d 61.

 The trial court erred in holding that the facts and circumstances showed appellant to be guilty of contributory negligence as a matter of law. He had the right, in absence of knowledge to the contrary, to assume that the "entire width" of the sidewalk, "or so much of it as is intended for travel, is in a reasonably or ordinarily safe condition; and he is not required as a matter of law to be on the lookout for defects or obstructions therein." · 43 C.J. 1078; City of Houston v. Isaacks, 68 Tex. 116, 3 S.W. 693. A traveler on a sidewalk is only required to use ordinary care for his own safety, and the test for determining contributory negligence is whether a reasonably prudent person in his situation would act substantially as he did. Shelley v. City of Austin, 74 Tex. 608, 12 S.W. 753. The liability of a city whose duty it is to keep its streets or sidewalks in reasonably safe condition and free from obstruction, is not limited to ordinary conditions as to time of day or weather, but it owes the duty to a person traveling in unusual weather, both in daytime and nighttime, unless such person is guilty of contributory negligence. City of Austin v. Schlegel, Tex.Civ.App., 228 S.W. 291, affirmed Tex.Com.App., 257

S.W. 238. Under the rule of liability stated above as to the Henderson estate and C. C. McBurnett, the same rules with regard to the issue of the alleged contributory negligence of appellant are applicable. And since we are reversing and remanding the cause we will briefly state the controlling facts.

The sign was erected and maintained over one of the main sidewalks of the City of San Angelo, and in the position above detailed. Appellant had passed along the sidewalk in daytime on the evening before the accident, but did not notice the sign. Shortly before the time of the accident appellant and Paul Fox came out of the hotel onto the sidewalk and waited under the hotel canopy some fifteen minutes for a downpour of rain to stop, and while waiting they were joined by Jas. H. Smith, an employee of the hotel. The rain did not stop and each of them decided to "make a run" for their cars. Smith's car was parked a few yards down the street and just in front of the sign. Appellant's car, in which Fox intended to ride, was parked down the street a short distance and on the opposite side of the street. Smith ran to his car. Fox decided to run diagonally across the street to appellant's car. Smith testified that he saw appellant start out from beneath the hotel canopy, running along the wall with his hat pulled down over his face, and saw him collide with the sign just in front of him. Appellant testified that he pulled his hat down to protect his eyes from the rain; but not over his eyes so as to block his vision; and that to protect himself from the rain he proceeded near the wall of the building at what he regarded as "double time" in the army; that he saw the sign just as the point of his left shoulder struck the metal outside edge of the sign, which knocked him to the sidewalk, breaking his hip bone, and causing serious injury. Appellant was about 40 years of age and weighed between 180 and 190 pounds. Neither of the three saw the sign prior to the time appellant collided with it. There were some street or awning lights in the neighborhood of the sign. It was not lighted or illuminated. Smith testified: "Q. There wasn't anything about that sign to attract the attention of anybody who was not looking for it? A. I don't think the sign would have attracted attention, no, sir."

 The only conflict in the evidence as to the manner in which the accident

occurred was Smith's testimony as to the way appellant was running with his hat down over his face and in a stooping position. All the witnesses agreed that there was nothing about the unlighted sign at the time that would attract the attention of any person not looking for it. The normal impulse of each of these three witnesses was to run for their cars to get out of the rain. Such, we think, is the normal impulse of the ordinarily prudent person. If the sign had been only a foot and 8 inches higher on the wall, the accident would not have happened, and if it had been lighted or illuminated the accident would probably not have happened. These facts and circumstances raise a jury issue as to whether appellant was guilty of contributory negligence, which was a proximate cause of his injury. City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693; City of Fort Worth v. Johnson, 84 Tex. 137, 19 S.W. 361; Butler v. City of Conroe, Tex.Civ.App., 218 S.W. 557; Carey v. Pure Distributing Corporation, 133 Tex. 31, 124 S.W.2d 847; City of Galveston v. Hemmis, 72 Tex. 558, 11 S.W. 29, 13 Am.St.Rep. 828.

The judgment of the trial court is reversed and the cause is remanded.